UNIVERSAL SAVINGS & TRUST CO. et al. v. STONEBURNER et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1902.)

No. 418.

1. COURTS—JURISDICTION—RESTRAINING ORDER.

Where a bill in chancery is filed with the court, it has jurisdiction to issue an order restraining defendants and appointing a receiver, though the bill is not lodged in the clerk's office and subpœna issued until two days thereafter.

2. INJUNCTION—RECEIVER—APPLICATION TO REMOVE—HEARING—DECREE—APPOINTMENT.

Where an order restraining defendants and appointing a receiver is awarded before subpœna is issued, if such award is improvident a decree, made after hearing on defendants' application to discharge the receiver and dissolve the injunction, denying such relief, amounts, in substance, to the granting of an injunction and the appointing of a receiver.

3. SAME—BILL—RIGHT OF STOCKHOLDERS TO SUE—JURISDICTION—EQUITY.

Complainants in their bill alleged that they owned full-paid stock in a building association, which, under the by-laws, they were entitled to withdraw and receive the value thereof; that they had given the prescribed notice and demanded such value repeatedly, but, though other stock on which notice was served after theirs had been paid, payment was refused them; that the managers of the association had squandered and mismanaged the funds, and conspired with the directors of a rival company to turn the assets and business over to such company, and, pursuant to such conspiracy, had caused the election of the majority of such directors as directors of the association, and officers thereof; that such new directors and officers were conducting the business for their own personal gain and in the interest of the other company, ignoring the interests of the stockholders; and that the association was wholly insolvent. Complainants prayed an injunction and receiver. *Held*, that the bill stated facts entitling complainants to equitable relief, and giving the court jurisdiction; application by them to the directors or a meeting of the stockholders for redress or leave to institute the suit being unnecessary.

4. SAME—DISCRETION.

Where, on the application for receiver and injunction, the allegations of such bill were fully supp rted by affidavits and exhibits, the court did not improvidently exercise its discretion in awarding such relief.

5. SAME--APPEAL—ERROR NOT PLAINLY APPARENT.
    Where an injunction and receiver were properly awarded on the bill,
    affidavits, and exhibits presented by complainants, and the answer and
    testimony presented by defendants on their application to set aside such
    order did not materially change the case, and the application was de-
    nied, though the evidence is conflicting, it not being plainly apparent
    that the court erred in entering the orders, they should not be reversed.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

W. P. De Saussure and Wyndham R. Meredith, for appellants.

Robert Stiles, A. L. Holladay, and Emmett Seaton, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

GOFF, Circuit Judge.   The appellees, who were complainants below, on the 25th day of May, 1901, tendered their bill to the circuit court of the United States for the Eastern district of Virginia, alleging, among other things, that they were the owners of stock in the defendant company to the amount of $12,000, and that they had paid cash to said company for the stock to the par value of the same; that the appellee Stoneburner owned of said stock 50 shares of class E and 50 shares of class C, each share of said stock being of the par value of $100; that the money invested in the stock of class E could be withdrawn at any time after 6 months from the date of the certificate therefor, and the money invested in class C stock could be withdrawn at any time, upon the holder thereof giving written notice of his purpose so to do, but that, in its discretion, the company could require the lapse of 60 days before making payment of the money due on class C stock; that the appellee Stoneburner on the 3d day of April, 1900, gave notice in writing to the company of his intention to withdraw the value of all his stock of both classes, and that shortly thereafter the appellee Young did also give such notice; that the receipt of such notices by the company was duly admitted; that both of said appellees repeatedly made demand upon the company for the payment of the withdrawal value of their stock, and that such payment was always refused, nor had the same been made when the bill was filed, that said failure so to pay was because of the improper manner in which the business affairs of the company had been theretofore managed; that it was the duty of the officers and directors of the company to make provision for the payment of withdrawing stockholders, and that many stockholders owning relatively smaller amounts of stock than said appellees held had been paid in full the amounts due them, to the prejudice of the appellees, since their said notices had been served; that within the two years immediately preceding the filing of the bill the business of the company had materially decreased, as also had its assets, but that during the same time its liabilities had increased; that the officers and directors of the company in office prior to January 23, 1901, formed a plan with the defendants other than said company, seven in number, that they would, by their votes, and the votes of others controlled by them,

deliver said company into the hands and management of said seven defendants, who constituted the board of directors of the Prudential Banking & Trust Company, then a competitor for the character of business the defendant company was engaged in; that on January 23, 1901, five of said defendants were elected directors of the defendant company, one of them secretary and treasurer, and the remaining one assistant secretary and treasurer, the old board and old officers then and there retiring; that after such election the new officials set to work to carry out their preconceived plan of personal gain to themselves, ignoring the interests of the stockholders of the defendant company, the control and management of which had been absolutely turned over to them; that said new officials did, by all means in their power, endeavor to prevent the payment of the cash value of the stock of those who had filed notices for withdrawal, their intention being, instead of paying cash therefor, to issue new stock that would not have the withdrawal feature; that their purpose was to combine the assets of said company with the assets of the Prudential Banking & Trust Company, of which they were then also directors; that said new directors, soon after their election, increased the expenses connected with the management by voting additional salaries to the officers thereof, and that they also passed a resolution reducing the stock of all stockholders 20 per centum; and that the defendant company was, at the time of the filing of said bill, insolvent. The prayer of the bill was that the complainants therein be paid the withdrawal value of their stock, and that the same be declared a lien upon the assets of the company, that a receiver be appointed to take charge of and administer the affairs of the defendant company under the direction of the court, and that the defendants be enjoined and restrained from disposing of any of such assets, and also for such general relief as, under the circumstances, to equity appertains. The bill was sworn to by both of the complainants, and with it were filed a number of exhibits containing the by-laws of the company, its plan of doing business, and copies of various statements published by its management, showing its financial condition. On the day the bill was so presented to the court, an order was made and signed by the judge thereof, after he had read and considered said bill and exhibits, by which it was decreed that the company show cause before the court on the 6th day of July, 1901, why an injunction should not be granted, enjoining and restraining it and its officers from disposing of or exercising control over its assets; and, it appearing to the court that there was danger of irreparable injury from delay, it was ordered that in the meantime, and until the further order of the court, a restraining order issue in accordance with said prayer, but it was provided that said company might at any time, on giving five days' notice to complainants, move to vacate such restraining order and discharge the receiver which the court then proceeded to appoint. The bill so filed in court on the 25th day of May, 1901, was lodged in the clerk's office at Richmond, Va., on the 27th day of May, 1901, on which day the subpoena in chancery summoning the defendants to appear was duly issued, as was also the restrain-

ing order; and likewise on that day one of the receivers gave bond as required by the order appointing him, and took charge of the assets of the defendant company. The restraining order was served on all the defendants on the 27th day of May, 1901, as was also the subpœna; and on that day the defendant company served a notice on the complainants that it would on June 1, 1901, move the court to set aside the order appointing the receiver and granting the restraining order. On the 1st day of June, 1901, the complainants and all of the defendants, by their respective counsel, appeared before the court,—the former to resist, and the latter to move, the discharge of the receiver and the dissolution of the restraining order. On that day the receiver filed a report, as he was required to do by the order appointing him, showing the condition of the defendant company, and the assets of the same that had come into his hands; and the defendant company, as well as the individual defendants, filed their several answers to the bill, as also the affidavits of accountants and bookkeepers, and certain statements purporting to show the financial condition of the company; and the cause was then argued by counsel and submitted on said motions. On the 4th day of June, 1901, the court below entered an order declining to dissolve the injunction and refusing to discharge the receiver. From this order, as well as from the order signed by the judge on the 25th day of May, 1901, the defendant company prayed an appeal, which was duly granted.

The assignments of error are many in number, but we find that the consideration of a few will dispose of all the questions really involved in this appeal. Appellants insist that when the order of May 25, 1901, was entered, the suit in which it purported to be issued had not at that time been instituted, and that therefore said order was null and void. This claim is based upon the fact that the bill was not lodged in the clerk's office until the 27th day of May, 1901, and that the subpœna did not issue until that date. In other words, the insistence is that a suit in equity has not been commenced until the subpœna has issued. Appellants, therefore, claim that the receiver was appointed and the restraining order granted before the suit was commenced. While it is true that no process of subpœna can issue from the clerk's office in any suit in equity until the bill has been filed in such office, still it does not follow that the court, or a judge thereof in chambers, may not enter an order on consideration of the bill before it has been so lodged in said office. Under the old English practice, from which our procedure is taken, all bills in equity were first presented to the judge, who determined whether process should issue thereon; and, if he so ordered, then the bill was filed in the clerk's office. Subsequent proceedings in such suits have been controlled chiefly by rules of court, and the practice established thereunder. We are not aware of any statute or rule of practice, nor of any authoritative decision, by which the contention of the appellants in this particular instance can be sustained. In this case the bill was presented to the court on Saturday, the 25th day of May, 1901; and one of the orders now complained of was on that day, after due consideration of the bill and

exhibits, directed to be entered. The bill, therefore, was in fact filed on the 25th day of May, though it seems that process thereon did not issue until Monday, the 27th,—a practice not at all uncommon in the courts of the United States. If, as a matter of fact, the order of the 25th of May by which the receiver was appointed was improvidently awarded, would not the decree of the court made on the 4th of June following, after subpœna had issued, after appellants had given notice to discharge the receiver and dissolve the injunction, and after the court had heard argument thereon, amount, in substance, to the granting of an injunction and the appointing of a receiver? We think so.

Nor do we find merit in the claim of appellants that the court below did not have jurisdiction in this controversy. We think that the appellees, on the allegations in their bill contained, were clearly entitled to be heard in equity. In the case as made by the bill, it would have been useless for them to have again asked the directors of the defendant company for the relief such officials had repeatedly refused to grant them,—relief complainants were entitled to, but the granting of which was antagonistic to the plans the directors had in view. Under such circumstances, it was not necessary that complainants, as stockholders, should have applied to the board of directors or to a meeting of the stockholders for redress, or for permission to institute a suit by means of which relief could have been secured; for, if complainants' charges are true, such procedure would have been little less than a farce, and such suit, if instituted, should not have been under the control of such directors. Phosphate Co. v. Brown, 20 C. C. A. 428, 74 Fed. 321; Cook, Corp. § 741; McGeorge v. Improvement Co. (C. C.) 57 Fed. 262.

Appellants insist that even if the case was properly before the court below, and if the order granting the injunction and the appointing the receiver were regularly made, nevertheless, on the motion to dissolve and discharge, and on the case as made by the answers and the exhibits filed therewith, the court below erred in refusing to dissolve the injunction and in declining to discharge the receiver. It must be borne in mind that this is an appeal from an order appointing a receiver and granting an injunction, as well as from an order refusing to discharge said receiver and declining to dissolve the injunction. The court appointed the receiver and granted the injunction on the allegations of a bill, duly verified, charging the improper and fraudulent management of the defendant company by its directors; that the company was running at a loss and practically insolvent; that such condition of affairs was well known to the old board of directors, and that they, because thereof, abandoned the management of said company; that the new directory, being also the directors of another company, were using the assets of the defendant company in the interest of that other corporation; that complainants were refused payment of the withdrawal value of their stock, although other stockholders, whose applications for withdrawal were filed after complainants had given their notices, were paid in full. Also, we should bear in mind that the affidavits and exhibits filed by complainants fully sustained the charges in the

bill, and demonstrated the insolvency of the defendant company. Such being the case, the judge who entered the order of May 25, 1901, did not improvidently exercise the legal discretion with which he was invested.

Nor did the court below err in its order of June 4, 1901; for the case, as made by the answers and the testimony filed with them, was not materially changed thereby. We would not be justified in reversing the orders complained of by appellants, unless it was plainly apparent that the court below committed errors in entering them. The facts were found by the judge who heard the case, from conflicting testimony, we concede; but we think he exercised his discretion wisely, and we cannot, on the evidence now before us, do otherwise than affirm his action.

We are not at this time disposing of the case as if the appeal were from a final decree on the merits, and it will now go back to the court from whence it came, for further proceedings therein to be had, when additional evidence will doubtless be offered, and the questions at issue be finally disposed of.

Affirmed.