## GILLESPIE v. RUMP, SHERIFF.

[No. 20,391. Filed November 2, 1904.]

HABEAS CORPUS.—*Right of Writ Pending Suit.—Collateral Attack.*—Where plaintiff alleges in his petition for a writ of *habeas corpus* that he is held in custody under a warrant issued upon an indictment for murder; that such cause is still pending; that no final judgment has been rendered by such court; that over the objections of plaintiff, after the jury had been impaneled and sworn to try the cause, the court set aside such submission and discharged a juror therefrom; that he had filed an answer of former jeopardy to said indictment, but a demurrer thereto was sustained by the court, and asking for his discharge, he fails to state a cause for the issuance of such writ and his discharge should be denied, since the court has jurisdiction of the subject-matter and the person, and such petition is a collateral attack on the proceedings, a remedy by appeal being the proper course. *Maden* v. *Emmons,* 83 Ind. 331, overruled.

From Ohio Circuit Court; *George E. Downey,* Judge.

Action by James Gillespie against Harry Rump, as Sheriff of Ohio county, for a writ of *habeas corpus.* From a judgment denying the writ, the plaintiff appeals. *Affirmed.*

*J. B. Coles, Cynthia Coles* and *F. M. Griffith,* for appellant.

*Charles W. Miller*, Attorney-General, *William C. Geake,
C. C. Hadley* and *L. G. Rothschild*, for appellee.

DOWLING, J.—The appellant James Gillespie, who was
in the custody of the appellee Harry Rump, as the sheriff
of Ohio county, in this State, and confined in the jail
of that county, on June 4, 1904, filed in the office of the clerk
of the Ohio Circuit Court his verified petition for a writ
of *habeas corpus.*

The petition stated that the appellant was unlawfully
restrained of his liberty by the appellee at the jail of said
Ohio county; that the pretense for such restraint was that
on December 22, 1903, the grand jury of said Ohio county
returned to the circuit court of that county, at its Decem-
ber term, 1903, an indictment against the petitioner and
against Belle Seward, Carrie Barbour and Myron Bar-
bour, charging them with murder in the first degree, in
that they, on the 8th day of December, 1903, with intent
to kill and murder one Elizabeth Gillespie, did feloniously,
purposely, and with premeditated malice, shoot at and
against said Elizabeth Gillespie with a deadly weapon
called a shotgun, then and there loaded with gunpowder
and leaden balls, and did then and there purposely, felon-
iously, and with premeditated malice, mortally wound the
said Elizabeth Gillespie, of which mortal wound the said
Elizabeth Gillespie, on the 10th day of December, 1903,
died; that the petitioner was arrested on said charge, and
had since been, and then was, confined in said jail; that
the said restraint was illegal in this:    That on May 2,
1904, at the May term of the Ohio Circuit Court, the
petitioner and his codefendants were arraigned in open
court, and pleaded "not guilty" to said charge; that the
said cause was called for trial, and, on May 10, 1904, a
jury of twelve competent jurors (naming them), not re-
lated to any of said defendants, being in the jury-box, were
duly and legally impaneled, charged, and sworn to try
said cause, and a true verdict render according to the law

and the evidence; that afterward, on May 11, 1904, the State, by its attorneys, moved to set aside such submission on the ground that one of the jurors sworn to try said cause, to wit, one Oscar Jones, when examined in regard to his qualifications as a juror, had stated that he was not related by blood or marriage to any of the defendants in said cause, when, in truth and fact, he was so related, the mother of the said Jones being a first cousin of William Seward, the deceased husband of Belle Seward, one of the said defendants; that none of the attorneys for the State knew of such relationship, and that they had no opportunity to ascertain the existence of the same, the court having adjourned immediately after said juror was sworn to try said cause; that said juror made answer that he was not related to any of the defendants, and thereby misled counsel for the State, who would have challenged him for such cause had said relationship been disclosed; that shortly after the adjournment of the court on May 10, 1904, counsel for State ascertained the fact of such relationship, and on the next day, May 11, 1904, immediately on the reconvening of the court, presented its motion, supported by affidavit, to set aside such submission with a view to the reëxamination of said juror, and to give the State an opportunity to challenge him for the cause above stated; that, in truth and in fact, said juror was not then and there and is not related to the defendant Belle Seward, and that if any relationship ever existed it ceased upon the death of William Seward, the late husband of the said Belle Seward; that the said motion to set aside the submission of said cause to the jury was sustained by the court, to which decision the petitioner and his codefendants excepted; that thereupon the attorneys for the State proceeded to examine the said juror Oscar Jones, who testified that he and the husband of the defendant Belle Seward never considered themselves related, and were not related that he knew of; that the State then per-

emptorily challenged said juror, to which challenge the petitioner and his codefendants each objected, for the reasons that the answers of the said juror showed that he was not related to either of the defendants, and that said submission was set aside only on account of the said supposed relationship, and not for the purpose of enabling the State to exercise its right peremptorily to challenge said juror; that the objection was overruled by the court, and that the petitioner, and each of his codefendants excepted to such ruling; that the said juror was excused by the court, and that each of the defendants excepted to such decision; that thereupon the said defendants, and each of them, moved the court that they be discharged, for the reason that they had once been in jeopardy for the offense charged in the indictment, and that the impaneling of another jury placed them in jeopardy a second time for the same offense; that the said motion of the defendants was overruled by the court, to which decision each of them excepted; that other persons were summoned and examined touching their competency to sit as jurors in said cause; that thereupon the petitioner and his codefendants, and each of them, filed a special answer in bar, alleging that each of them had been once in jeopardy, and asking to be discharged from arrest in said cause; that the State, by its attorneys, filed a demurrer to said answer for want of sufficient facts, which demurrer was sustained, to which ruling the petitioner and his codefendants excepted; that, thereupon, a second and subsequent jury (naming the members thereof) were impaneled, charged, and sworn to try said cause, who, after hearing the evidence, the argument of counsel, and the charge of the court, retired on May 27, 1904, to deliberate on their verdict; that on Sunday, May 29, 1904, they reported to the court that it was impossible for them to agree upon a verdict, and that the said jury were thereupon discharged by the court from further consideration of said cause. The petition concluded

with a prayer for a writ of *habeas corpus,* and for the discharge of the petitioner.

The writ was issued and served, and the respondent moved to quash the same for the reasons that the petition did not state facts sufficient to entitle the petitioner to the writ, that the court had jurisdiction of the person of the defendant and of the subject-matter of the action, and that its acts could not be questioned collaterally, and that the rulings of the Ohio Circuit Court could not be reviewed in this proceeding. The objections to the petition were sustained, and the prisoner was remanded to the custody of the sheriff.

That statute provides that "No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following: * * * Fourth. Upon a warrant issued from the circuit court upon an indictment or information." §1133 Burns 1901, §1119 R. S. 1881 and Horner 1901. The only inquiry necessary or permissible in this case is, was the petitioner in custody upon such a warrant?

The jurisdiction of the Ohio Circuit Court over the subject of the action and the person of the petitioner at the time he was brought into court to answer the indictment and a jury was first impaneled to try him and his codefendants upon it is not questioned. That indictment is still pending against the petitioner, and no final judgment has been rendered in the cause. If it should be conceded that the appellant is correct in his contention that he has been once in jeopardy upon the charge contained in the indictment, and that the setting aside of the submission after the jury had been sworn to try the cause, the discharge of one of the jurors upon a peremptory challenge by the State, and the impaneling of a second jury—all without his consent, and over his objections duly presented—was equivalent to an acquittal, still the facts of such jeopardy and

acquittal would, at most, constitute a defense in bar of the action, and would require proof upon a second trial as any other fact or facts which might entitle the defendant to a verdict of "not guilty." Even if the proceedings of the court in setting aside the submission and discharging the juror were unauthorized and illegal, they were errors only, which, if proved upon a subsequent trial of the cause, might or might not amount to a defense to the action. But these supposed errors did not deprive the court of its jurisdiction over the subject of the action, or the person of the defendant. Certainly, they were not such as to render all further proceedings in the cause void. If, as counsel for appellant insist, their legal effect was to bar a further prosecution of the case under the indictment, the most that could be claimed for them would be that the facts were admissible in evidence under the plea of "not guilty" or a special answer, and were to be considered as other facts constituting the defense. §1832 Burns 1901; *Clem* v. *State* (1873), 42 Ind. 420. But if, upon sufficient proof, a former acquittal, or facts tantamount to such acquittal, should be established, and yet the defendant should be found guilty, the question of the sufficiency of such facts to constitute a defense would necessarily be presented to the trial court by a proper motion or objection, and upon final judgment against him the decision could be reviewed by this court on appeal.

The fact that the act of the court in discharging a juror and impaneling a second jury, even if erroneous, did not, *ipso facto,* deprive it of jurisdiction in the cause, and render its subsequent proceedings void, and the further fact that for any supposed error of the court in the proceedings complained of the defendant had a complete and speedy remedy by appeal, conclusively settle this controversy against him. The writ of *habeas corpus* can not be used as a substitute for the writ of *certiorari,* the writ of error, or an appeal. In this State, in all cases where the pro-

ceedings or judgment of the court under whose process or orders the petitioner was held were not void by reason of matter apparent on the face of the record, the remedy of a defendant in a criminal cause who complains of error in the proceedings and rulings of the court has been held to be by appeal. An inquiry upon a writ of *habeas corpus* into the validity of those proceedings, and the correctness of the decisions of the court would be a collateral attack upon the proceedings and orders, and as such it has been repeatedly declared unavailing and inadmissible.

Upon the question which we consider and decide on this appeal, and to that extent only, *Wright* v. *State* (1854), 5 Ind. 290, 61 Am. Dec. 90, is directly in point. In that case the judge of the circuit court in which the defendant was on trial upon an indictment for murder, over the objection of the defendant, discharged the jury on the last day of the regular term of the court, before the trial was finished, and continued the case until the first day of the succeeding term. The defendant contended that the discharge of the jury was unnecessary, and was equivalent to an acquittal. He sued out a writ of *habeas corpus* before the judge of the court of common pleas, and upon a hearing, in which the foregoing facts were shown, the judge remanded the petitioner to jail. An appeal was taken, and in deciding the case this court said: "The facts in this case show that the prisoner was in custody, awaiting his trial under an indictment for murder, and we are clearly of opinion that although the discharging of the jury by the circuit court was equivalent to a verdict of acquittal, yet as the case was not finally disposed of, and as there was no release of the prisoner by any judgment of the court, he must be regarded as in custody under the indictment. Had there really been a verdict of acquittal rendered by the jury, without further action by the circuit court, the judge of the court of common pleas could not have discharged him. If he could, at this stage of the

case, why not at any other? Why not even take the case from the hands of the jury in the midst of their investigation? Such is not the object or true meaning of our act of *habeas corpus*. See *State* v. *Sheriff* [1835], 3 Green (N. J.) 68; *Johnson* v. *United States* [1842], 3 McLean 89. In the case of *Commonwealth* v. *Deacon* [1822], 8 Serg. & R. 72, the prisoners, Roosevelt and Eddy, were indicted for forgery, acquitted on some of the counts of the indictment, and upon the others the jury failed to return a verdict. The mayor's court committed them for trial on these counts, and the question of the legality of their commitment was raised by *habeas corpus*. The court, in delivering the opinion, said: 'The indictment is still pending in the mayor's court. No judgment has been given on the verdict, nor do we know what judgment will be given. But we know that the mayor's court has jurisdiction over the offense with which the prisoners are charged, and if they should give an erroneous judgment, remedy may be had by writ of error, which will bring the case properly before us.' Prisoners remanded. The judge of the court of common pleas was compelled by statute, upon the petition, to award the writ, but upon the return of the facts above set forth, it was his duty to remand the prisoners to the circuit court. He has done so. That court has still jurisdiction over the prisoner, and may discharge him on motion, or he may plead the discharge of the jury in bar to a second trial. *Commonwealth* v. *Clue* [1831], 3 Rawle 498; *Weinzorpflin* v. *State* [1844], 7 Blackf. 194."

An attempt is made by counsel for appellant to distinguish the case of the petitioner from *Wright* v. *State* (1854), 5 Ind. 290, 61 Am. Dec. 90, for the reason that immediately upon the setting aside of the submission of the cause to the jury and the dismissal of the juror who was challenged by the State, the petitioner moved for his discharge from custody, and that upon the overruling of this motion he filed a special plea setting up the facts supposed

to show that he had once been in jeopardy, to which a demurrer was sustained. But it is clear that neither of these steps, nor the rulings of the court thereon, even if erroneous, operated to oust the jurisdiction of the court, or to render its further proceedings void. As was said in Wright's case: "As there was no release of the prisoner by any judgment of the court, he must be regarded as in custody under the indictment."

The principle upon which *Wright* v. *State* (1854), 5 Ind. 290, 61 Am. Dec. 90, was decided, was affirmed in *Wright* v. *State* (1855), 7 Ind. 324, where the court said: "While the case is still pending in the Johnson Circuit Court, we have no jurisdiction. 2 R. S. [1852] 195, 196. The prisoner is clearly entitled to his discharge; but the motion to that effect should be made in the court where the indictment is pending."

In *Wentworth* v. *Alexander* (1879), 66 Ind. 39, the defendants were jointly indicted for murder in the second degree. The jury returned a verdict of "guilty as charged," fixing their punishment at confinement in the State's prison for two years. The trial court being of the opinion that the verdict was a nullity, after a statement by the defendants that they waived none of their rights, and had motions to make, discharged the jury. The defendants thereupon moved for their discharge, and their motion was overruled. The court then continued the case until the next term. A writ of *habeas corpus* was issued upon the petition of the defendants, and on the hearing they were remanded to the custody of the sheriff. On appeal to this court it was held that the defendants had been once in jeopardy, but that they were in custody by the order of a court of competent jurisdiction upon an indictment presented by a grand jury, and that the circuit court had no power to inquire by a writ of *habeas corpus* into the legality of the order under which they were committed.

The facts in *Smith* v. *Hess* (1884), 91 Ind. 424, were these: The petitioner had been indicted for grand larceny. He pleaded guilty to the charge. The record entry following the entry of the plea was, "sentence withheld." The prisoner was an adult. He was permitted to depart from the court without recognizance or requirement that he should at any time return. Two months afterward he was arrested without a new warrant or other proceeding, and was taken before the judge of the criminal court, sentenced, and remanded to the custody of the sheriff. On appeal in a proceeding for his discharge upon a writ of *habeas corpus* this court, by Zollars, J., said: "What we decide is, that the judgment of the criminal court, under which appellant is imprisoned, can not be overthrown in a collateral attack here made upon it. For all irregularities and errors that may intervene in the trial and progress of a criminal cause, the statute of this State provides a direct, easy, cheap and speedy remedy by appeal. The doctrine of the cases is, that where such remedy is provided, defendants imprisoned under judgments, and seeking to overthrow them for reasons which do not render them absolutely void, and which are not apparent upon the record, will be driven to seek a remedy by appeal, or other direct proceeding. A judgment by a court of competent jurisdiction, valid upon its face, and a valid commitment under it, is an unanswerable return to a writ of *habeas corpus.* A large number of the states have statutes providing that a prisoner shall not be discharged under a writ of *habeas corpus,* where it appears that he is in custody by virtue of the judgment or decree of a court of competent jurisdiction, or by virtue of a warrant issued upon such judgment or decree. This State is one of them. The writ of *habeas corpus* is not to take the place of a writ of error or a court of appeals."

*McGuire* v. *Wallace* (1887), 109 Ind. 284, was an appeal from an order upon *habeas corpus* remanding the

prisoner to custody. In the course of the opinion by Mitchell, J., it was said: "It is enough to say that both the petition and the return before us show that the appellant is in custody in pursuance of the order of a court of competent jurisdiction, such order being final so long as it is permitted to stand. When this point in the investigation is reached, all further inquiry is at an end."

It was declared in *Koepke* v. *Hill* (1901), 157 Ind. 172, 176, a proceeding upon a writ of *habeas corpus,* that "In this State, * * * the holdings have been to the effect that, whenever a court is confronted with a question which it has a right to decide correctly, its erroneous judgment will not be subject to a collateral attack, irrespective of whether the mistake of law concerned the common, or statutory, or constitutional law."

*Winslow* v. *Green* (1900), 155 Ind. 368, decides that "The law is firmly established that, jurisdiction being once obtained over the person and subject-matter, no error or irregularity in its exercise will make the judgment void." See, also, *Williams* v. *Hert* (1901), 157 Ind. 211, 87 Am. St. 203; *Pritchett* v. *Cox* (1900), 154 Ind. 108; *Turner* v. *Conkey* (1902), 132 Ind. 248, 17 L. R. A. 509, 32 Am. St. 251; *Kinningham* v. *Dickey* (1890), 125 Ind. 180; *McLaughlin* v. *Etchison* (1891), 127 Ind. 474, 22 Am. St. 658; *Lee* v. *McClelland* (1901), 157 Ind. 84; *Cruthers* v. *Bray* (1903), 159 Ind. 685; *Willis* v. *Bayles* (1886), 105 Ind. 363; *Lowery* v. *Howard* (1885), 103 Ind. 440; *Farmer* v. *Lewis* (1884), 92 Ind. 444, 47 Am. Rep. 153. 17 Am. and Eng. Ency. Law (2d ed.), 1072, has an exhaustive collection of English and American cases, which see.

The decision in *Maden* v. *Emmons* (1882), 83 Ind. 331, sustains the views expressed by counsel for appellant. That case, however, seems to have been decided without regard to the principles asserted and maintained in the numerous opinions cited herein, and without any notice

taken of those preceding it. We have carefully examined it, but we can not reject the authority of the well-considered cases both before and subsequently rendered, with which it is directly in conflict, and we are compelled to overrule it.

It is to be observed that the same section of article forty, concerning the writ of *habeas corpus* (§1133 Burns 1901, §1119 R. S. 1881 and Horner 1901), which denies to any court or judge the power to inquire into the legality of any judgment whereby the party petitioning for the writ is in custody, equally denies to every such court and judge the power to inquire into the legality of any process whereby the party is held, where such process is a warrant issued from the circuit court upon an indictment or information. The reasoning in the cases in this State where the validity of the judgment is sought to be questioned applies with equal force to a case where the petitioner is held upon a warrant issued on an indictment or under an order made by the court in which the indictment is pending. The same general doctrine relative to the limitations upon the power of the court upon *habeas corpus* to inquire into the legality of the judgment or process by which the petititioner is held in custody where a writ of error or appeal will lie, has been recognized constantly by the Supreme Court of the United States. In *In re Swan* (1893), 150 U. S. 637, 648, 14 Sup. Ct. 225, 37 L. Ed. 1207, it was said by Fuller, C. J., who delivered the opinion of the court: "We reiterate what has so often been said before, that the writ of *habeas corpus* can not be used to perform the office of a writ of error or appeal."

Again, in *Ornelas* v. *Ruiz* (1895),161 U. S. 502, 508, 16 Sup. Ct. 689, 40 L. Ed. 787, the court held that "by repeated decisions of this court it is settled that a writ of *habeas corpus* can not perform the office of a writ of error." See, also Church, Habeas Corpus (2d ed.), §505.

It appears from the petition that the appellant is in

custody upon a warrant issued from the Ohio Circuit Court on an indictment which is still pending and undisposed of, and under the orders of the court in that cause. This being so, no inquiry can be made by any court or judge in a proceeding by writ of *habeas corpus* into the legality of that process, or the detention of the prisoner pursuant to it. If errors have intervened in the determination of any questions arising in the cause, the remedy of the prisoner is by appeal, and not by petition for his discharge upon a writ of *habeas corpus.*

Notwithstanding some expressions found in several decisions referred to in this opinion, we have not thought it proper to consider the question of the effect of the discharge of the juror by the trial court and the impaneling of a second jury to try the cause. On that subject we intimate nothing. The fact that every attack by writ of *habeas corpus* in cases of this character is collateral furnishes a sufficient reason why the court should, under no circumstances, express its views upon the merits of the defense to the main case sought to be presented, and anything said upon that subject must necessarily be purely obiter.

Our conclusion is that the court did not err in quashing the writ and remanding the prisoner. Judgment affirmed.