## Gillie, Sheriff, *v.* Fleming.

[No. 23,639. Filed January 6, 1922.]

1. HABEAS CORPUS.—*Violation of Restraining Order.—Commitment.—Right to Writ.—Collateral Attack.—Statutes.*—Where the circuit court adjudged defendant, over whom it had jurisdiction, guilty of contempt of court for disobedience of an injunction, pursuant to §§1217-1219 Burns 1914, §§1160-1162 R

S. 1881, the superior court had no jurisdiction in a *habeas corpus* proceeding to inquire into the facts on which the order of commitment was based, in view of §1176 Burns 1914, §1119 R. S. 1881, since the circuit court had jurisdiction under §1, Art. 7 Constitution; §1204 Burns 1914, §1147 R. S. 1881; §1217 Burns 1914, *supra;* §1433 Burns 1914, §1314 R. S. 1881, and, if defendant wished to challenge any alleged errors or irregularities in the proceedings, his remedy was by appeal from the injunction under §1392 Burns' Supp. 1921, Acts 1915, p. 149, subd. 17, or from the judgment in the contempt proceedings under §§1046, 1048 Burns 1914, §§1011, 1013 R. S. 1881.  pp. 448, 450.

2.  INJUNCTION.— *Criminal Contempt.— Wilful Disobedience of Injunction.*—Wilful disobedience of acts expressly forbidden by an injunction constitutes criminal contempt.  p. 449.

3.  INJUNCTION.—*Validity of Order.—Signing Order for Temporary Injunction before Issuance of Summons.—Statutes.*— Where an order for a temporary injunction bearing the judge's signature was filed with the clerk, and a copy of it was issued to the sheriff and served by him at the time the summons was served, the mere fact that the judge affixed his signature to the order immediately after the complaint was filed, and before the summons had been issued and placed in the hands of the sheriff, did not affect the validity of the order after it and the summons both had been served, since the power to issue a restraining order at the time of commencing the action or at any time afterward, under §§1206, 1207 Burns 1914, §§1149, 1150 R. S. 1881, includes power to sign such an order at the time the complaint is filed, so that it may be served with the summons.  p. 457.

4.  INJUNCTION.—*Disobedience of Injunction.—Contempt Proceedings.—Defenses.—Insufficiency of Return.*—The failure of the return to show that the copy of a restraining order served on defendant had been certified was no defense in a contempt proceedings for a violation of such order, since, if the defendant believed the order or service upon him to be irregular or erroneous, he should have taken action to have the order or return of service set aside.  p. 458.

5.  INJUNCTION.—*Contempt Proceedings.—Order of Attachment. —Incorrect Description of First Day of Term.—Sufficiency of Process.—Statutes.*—Where the order of attachment against defendant for violation of a restraining order required that defendant be brought into court or find sureties for his appearance "on the first day of the next term" as provided by §1219 Burns 1914, §1162 R. S. 1881, the fact that the order designated the first day of such term as July 17, whereas the next regular term would begin on the first Monday in September, did not in-

validate the order, since, the date of such term being fixed by law, defendant had sufficient notice when it would begin.   p. 459.

6.  INJUNCTION.—*Contempt Proceedings.*—*Defenses.*—*Order-Book Entry of Restraining Order.*—*Failure of Judge to Sign.*—The fact that the order-book entry of a restraining order had not been signed by the judge at the time that the order was disobeyed is no defense in a contempt proceeding for such disobedience, where the order itself was signed, it being unnecessary in such case that the order be copied by the clerk into the order book and the entry also signed, to make the other binding.  p. 459.

From Allen Superior Court; *William N. Ballou,* Judge.

*Habeas corpus* proceeding by William Fleming against George W. Gillie, sheriff. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Vesey & Vesey, Barrett, Morris, Hoffman & Barrett* and *A. E. Thomas,* for appellant.

*Harry H. Hilgeman, William Fruechtenicht* and *Carl Yaple,* for appellee.

EWBANK, C. J.—Appellee brought an action of *habeas corpus* against appellant in the superior court of Allen county, and appellant made a return which was adjudged insufficient, whereupon appellee was discharged. The sufficiency of the return is the only question presented for decision. The return stated, in substance, that a verified complaint for an injunction and a restraining order was filed in which appellee and others were named as defendants, together with a surety company bond, and that a summons to appellee was duly issued, and was served on him by the sheriff, and due return was made; that at the same time when he served the summons, the sheriff served on appellee a restraining order forbidding him and others to do the acts sought to be enjoined, by delivering to appellee a copy of the order; that such order had been signed by the judge of the circuit court as such judge; that a few days after service of the summons and of a copy of the

order, an affidavit was filed with the clerk of the court and the judge, in vacation, which stated that after said complaint had been filed and after the summons and copy of the order had been served, the appellee and other defendants to the suit for an injunction openly and defiantly did the acts forbidden by the court's order, and repeated those acts on succeeding days; that upon the filing of this affidavit the judge of the circuit court signed and issued an order reciting that it had been filed, and that it charged appellee and others with wilfully disobeying said order and injunction, and that the court thereupon ordered an attachment for contempt to be issued against appellee and others requiring them to appear "on the first day of the next term (of court) to be held on the 17th day of July, 1919, and show cause," etc., and ordering service thereof by arresting appellee and the others and bringing them into court "on the first day of its next session," unless they should enter into a bond to appear "on the first day of the next term" of court, conditioned to answer such contempt, and to pay the plaintiff its costs and damages. The affidavit and order of attachment seem to be in substantial compliance with the statute, unless in the particulars hereafter mentioned. §§1217, 1219 Burns 1914, §§1160, 1162 R. S. 1881. The return further recites that appellee was thereupon arrested, and not giving the required bond, was lodged in jail, pursuant to said order, by the appellant, who was the sheriff of Allen county, and that at the time the return was made appellee was held in custody under said order.

It clearly appears from the return that after the complaint for an injunction and a bond had been filed, a summons for appellee and a copy of an injunction order which had been signed by the judge were served on appellee, and that he was afterward charged by affidavit with doing certain acts forbidden by that order, and

that thereupon an order was issued commanding his appearance in court at a time named, and that he was arrested and lodged in jail in default of security for his appearance at that time and for his obedience to the order in the meantime.

But appellee objects to the return for each of several reasons as follows: (a) That the restraining order was dated on the day the complaint was filed, and the return states that it was signed on that day, but the summons was not issued until the next day; (b) that the return does not show the copy of the restraining order served on appellee to have been certified; (c) that it does not show the order to have been signed on the order book of the court, while the petition expressly alleges that the order book had not been signed when the order was disobeyed; (d) that the order of attachment commanded appellee's appearance in court "on the first day of the next term thereof to be held on the 17th day of July," whereas the next regular term would not begin until the first Monday of September; and it was therefore ambiguous.

As preliminary to the consideration of any of these propositions the question arises whether, after the circuit court had considered the facts stated in the

1. affidavit for an attachment and those shown by its record and had adjudged that an attachment should issue, the superior court had power, in a collateral action of *habeas corpus,* to examine into any of the matters suggested by these objections. The circuit court undoubtedly had jurisdiction of the subject-matter of an action for an injunction, and the attachment of a person for violation of an injunction which it had issued. §1, Art. 7 Constitution; §1204 Burns 1914, §1147 R. S. 1881; §1217 Burns 1914, *supra*; §1433 Burns 1914, §1314 R. S. 1881. The filing of the complaint and bond and the service of a summons in the

action for an injunction gave the circuit court jurisdiction of the person of appellee in that proceeding, and the filing of an affidavit charging that he had disobeyed an injunction, his arrest on an order of court issued thereon and his lodgment in jail gave that court jurisdiction of his person in the proceeding against him for contempt. The superior court has no supervisory power over the circuit court, and even if it had, a writ of *habeas corpus* is in no sense a writ of error. But if appellee wished to question mere errors and irregularities he might have taken an appeal from the interlocutory injunction (§1392 Burns' Supp. 1921, Acts 1915 p. 149, subd. 17) or from any judgment the circuit court might render in the proceeding for contempt of court. §§1046, 1048 Burns 1914, §§1011, 1013 R. S. 1881; *State* v. *Rockwood* (1902), 159 Ind. 94, 64 N. E. 592.

A statute which has been in force in Indiana since long before our present constitution was adopted, provides as follows: "No court or judge shall inquire into the legality of any judgment or process whereby the party is in his custody, or discharge him when the term of commitment has not expired  *  *  *  for any contempt of any court, officer, or body having authority to commit; but an order of commitment, as for contempt, upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications." §1176 Burns 1914, §1119 R. S. 1881. The alleged contempt charged in this case was the wilful and violent doing of acts alleged to have been expressly forbidden by an injunction, and if the charge was true it

2.  constituted criminal contempt. *Thistlethwaite* v. *State* (1898), 149 Ind. 319, 49 N. E. 156. The statute above quoted is merely declaratory of the common law, as administered by courts from the remote past.

The writ of *habeas corpus* was known to the common law from the earliest times. *Ex parte Yerger* (1868), 8 Wall. (75 U. S.) 85, 19 L. Ed. 332; *William-son's case* (1855), 26 Pa. St. 9, 67 Am. Dec. 374; 1 Bailey, Habeas Corpus 2; Church, Habeas Corpus (2d ed.) §1 *et seq.*; 21 Cyc 283. As early as 1630, upon petition for a writ of *habeas corpus* by one Chambers, to which return was made that he had been committed by virtue of a decree in the Star Chamber, because of "insolent behavior and words spoken at the council table," he denied the power of the court of Star Chamber to punish for words only, "but all the court informed him that the court of Star Chamber was * * * one of the most high and honorable courts of justice; and to deliver one who was committed by the decree of one of the courts of justice was not the usage of this court. And therefore he was remanded." Chambers' Case, 3 Croke (Cro. Car.) 133 and 168.

In 1677, the Earl of Shaftsbury petitioned for *habeas corpus,* and return was made that he had been committed by order of the House of Lords "for high contempt committed against this house."

It was stated in argument that the case was one of first impression, and though imprisonments for contempts had been frequent by one or the other of the Houses of Parliament, no person ever had sought enlargement in the courts until then. Each of the judges delivered an opinion that the court of King's Bench had no jurisdiction to inquire into a commitment by the House of Lords, during the continuance of the session. *Earl of Shaftsbury's Case* (1677), 1 Mod. 144, 156, 157. Two years later, in 1679, the celebrated *Habeas Corpus* Act was passed. It introduced no new principle, but provided that the writ must be issued on proper application in vacation as well as in term, and provided a remedy against a court or judge that refused to issue it.

4 Hallam, Constitutional History of England 500; Church, Habeas Corpus §25a.

"The provisions of the (English) habeas corpus act are subject to exceptions; they are not to apply if it appear to the authority issuing the writ that the prisoner is detained by legal process, order, or warrant out of some court that hath jurisdiction in criminal matters, or by legal warrant for such matters or offenses for which, by the law, the prisoner is not bailable; or if he be committed for treason or felony, plainly expressed in the warrant of commitment, or if he be convict or in execution by legal process, or if he be charged with process in any civil suit. The exceptions will be found straggling along through the act." Church, Habeas Corpus §28. In 1704, the judges of all the courts of England, except chief Justice Holt of the King's Bench, resolved that a person committed by the House of Commons for contempt could not be released on *habeas corpus*. The three justices who delivered the prevailing opinions on behalf of the eleven stated that it was the first *habeas corpus* ever brought by a person committed by the House of Commons, that said house was a court, with power to judge of its own privileges, and that another court could not take upon itself to review and set aside the decision of the house that its privileges had been infringed. *Regina* v. *Paty* (1704), 2 Raymond (Eng.) 1105, Salk. 503.

In a case which arose in 1771 Lord Chief Justice De Grey gave an opinion (in part) as follows: "I do not find any case where the courts have taken cognizance of such execution, or of commitments of this kind; there is no precedent of *Westminster Hall* interfering in such a case. In *Sir J. Paston's case,* 13 Rep. there is a case cited from the *year-book,* where it is held that every court shall determine of the privilege of that court; * * * If the court of Common Pleas should commit

a person for a contempt, the court of King's-Bench would not inquire into the legality or particular cause of commitment, * * * The courts of B. R. or C. B. never discharged any person committed for contempt, in not answering in the court of Chancery, if the return was for a contempt; if the Admiralty Court commits for a contempt, or·one be taken up and committed on an *excommunicato capiendo,* this court never discharged the person committed. Formerly, when many abuses were committed, and the people could not obtain a remedy, the subject was not contented with the ancient *habeas corpus,* but did not complain of the courts for refusing them what they could not by law grant them; instead of that, they sought redress by petition to the throne. In Chief Justice *Wilmot's* time, a person was brought by *habeas corpus* before this court, who had been committed by the court of Chancery of *Durham;* that court being competent, and having jurisdiction, the man was not discharged, but recommitted."

And Mr. Justice Blackstone, concurring in the same case, said (in part) : "All courts, by which I mean to include the two houses of parliament, and the courts of *Westminster Hall,* can have no control in matters of contempt. The sole adjudication of contempts, and the punishment thereof, in any manner, belongs exclusively, and without interfering to each respective court. Infinite confusion and disorder would follow, if courts could, by writs of *habeas corpus,* examine and determine the contempts of others, * * * it would occasion the utmost confusion, if every court of this Hall should have power to examine the commitments of the other courts of the Hall, for contempts; so that the judgment and commitment of each respective court, as to contempts, must be final, and without control." *Case of Bras Crosby, Lord Mayor of London* (1771), 3 Wilson (Eng.) 188, 199, 200, 204.

Gillie, Sheriff, *v.* Fleming—191 Ind. 444.

In the State of New York, in 1809, a judge of the Supreme Court, on *habeas corpus* in vacation, discharged a person who had been committed to prison by the Court of Chancery, for "contempt and malpractice." The Court of Chancery again imprisoned him for the original offense, adjudging the discharge to be illegal and without effect. He was a second time discharged by the same judge of the Supreme Court, and was a third time imprisoned for the same matter (*Case of Yates* (1809), 4 Johns (N. Y.) 318, 345). A third petition for *habeas corpus* filed in term was brought before the whole bench of five judges, when three of the judges, concurring in an opinion written by Chief Justice (after Chancellor) Kent, held "that the judgment and commitment of each respective court, as to contempts must be final and without control" (Ditto p. 372), and remanded the prisoner. The cause was taken by writ of error to the Court of Appeals, which then included the state senators.

A motion to deny the writ of error and quash the writ of *habeas corpus* was overruled by sixteen negative votes against twelve affirmative votes, and upon an opinion prepared by Senator Clinton, the cause was reversed and remitted to the Supreme Court. *Yates* v. *People* (1810), 6 Johns (N. Y.) 337, 496, 522.

The prisoner then brought suit against the chancellor to recover the statutory penalty for having been reimprisoned after he had been discharged on *habeas corpus*. A demurrer to his complaint was sustained by the Supreme Court (*Yates* v. *Lansing* (1810), 5 Johns (N. Y.) 282, 298) and the cause was removed by writ of error to the Court of Appeals, which affirmed the judgment by a vote of thirteen to seven. Senator Platt, who wrote the majority opinion in that case, said: "Since the violent contest between the Court of Chancery and the King's Bench, in the reign of *James* I, the *English*

authorities uniformly show a scrupulous forbearance in their courts to interfere with each other's proceedings, in matters of contempt. The *case of Chambers (Cro. Car.* 168) exemplifies this remark. He was committed for a contempt, and upon being brought into the King's Bench, on *habeas corpus,* he was remanded, and the court said 'it is not the usage of this court to deliver one committed by the decree of one of the courts of justice.' Such has been the uniform tenor of *English* decisions down to the era of our independence. This principle has been so fully recognized by our courts, that no question has arisen upon it before the present case. It is founded on this strong reason, that these superior courts are *coordinate.* Equal confidence is reposed in their learning and integrity; and it is, therefore, unfit that one should assume a right to judge of the other's proceedings, especially as the constitution has provided a tribunal for the express purpose of correcting their errors." *Yates* v. *Lansing* (1811), 9 Johns (N. Y.) 395, 421; *Gist* v. *Bowman* (1798), 2 Bay (S. C.) 182.

"Does anybody doubt the jurisdiction of the District Court to punish contempt? Certainly not. All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless. The authority to deal with an offender of this class belongs exclusively to the court in which the offense is committed; and no other court, not even the highest, can interfere with its exercise, either by writ of error, mandamus, or *habeas corpus.*" *Williamson's Case, supra.*

To end a controversy which had lasted several years, with varying results, as outlined by the decisions cited above, the legislature of New York enacted a statute, in 1818, which provided "that such person (brought up by *habeas corpus*) shall be remanded if it shall appear

unto the chancellor, Judge or other officer that he
* * * is detained * * * · for a contempt, espe-
cially and plainly charged in the commitment, by some
court having authority to commit for contempts, unless
the power and authority of such court shall have ex-
pired and ceased." Laws N. Y. 1818, Ch. 277, p. 299;
*Williamson's Case, supra.*

In 1822, in deciding that a person committed to jail
by the circuit court for the District of Columbia for
contempt of court in refusing to answer a question on
the ground that his answer would tend to criminate him
could not be discharged on *habeas corpus* by the Su-
preme Court of the United States, Mr. Justice Story
reviewed at some length the case of Bras Crosby, Lord
Mayor, *supra,* and said: "So that it is most manifest,
from the whole reasoning of the court in this case, that
a writ of *habeas corpus* was not deemed a proper rem-
edy, where a party was committed for a contempt by a
court of competent jurisdiction; and that, if granted,
the court could not inquire into the sufficiency of the
cause of commitment. * * * We are entirely satis-
fied, to administer the law as we find it, and are all of
opinion, that, upon the facts of this case, the motion
(for a writ of *habeas corpus*) ought to be denied." *Ex
parte Kearney* (1822), 7 Wheat. (20 U. S.) 37, 44 (5
L. Ed. 391).

Also in 1822, the Supreme Court of Indiana, by Mr.
Justice Blackford, declared the law as follows: "Had
they (the circuit court) considered their officer guilty of
such gross malpractice, as to require his being compelled
in this summary way to satisfy the judgment, they
might, for the contempt, have committed him to prison,
or heavily amerced him; and have then refused to dis-
charge him, or remit the fine, until the judgment was
satisfied. *Rex* v. *The Sheriff of Middlesex,* 1 H. Bl. 543
* * * It is the opinion of this Court, that in these

cases we have have no jurisdiction. Courts of record have exclusive control over charges for contempt; and their conviction or acquittal is final and conclusive. This great power is intrusted to these tribunals of justice, for the support and preservation of their respectability and independence; it has existed from the earliest periods to which the annals of jurisprudence extend; and except in a few cases of party violence, it has been sanctioned and established by the experience of ages. *Ld. Mayor of London's case,* 3 Wils 188.— Opinion of C. J. Kent in the case of *Yates* 4 Johns. Rep. (N. Y.) 354.—*Johnson* v. *The Commonwealth,* 1 Bibb. (Ky.) 598." *State* v. *Tipton* (1822), 1 Blackf. 166, 167. Statutes thereafter enacted being held to provide for appeals from convictions for contempt, the case of *State* v. *Tipton, supra,* was overruled so far as it held that no appeal could be taken from the judgment in a proceeding for contempt of court. *Whittem* v. *State* (1871), 36 Ind. 196, 217; *State* v. *Rockwood, supra.* But the authorities cited by Judge Blackford were not criticised, being merely distinguished, as applying only to *habeas corpus* cases and not to appeals. *Whittem* v. *State, supra.*

A great many decisions, in many different common-law jurisdictions, have held that where a party is committed for contempt of court the only question which can be inquired into on *habeas corpus* is whether the court by which he was committed had jurisdiction of the subject-matter, and whether it had acquired jurisdiction of the party at the time it made the order of commitment, and whether the judgment or order pursuant to which the party is held was within the power of the court to make. 21 Cyc 295, and many cases cited; 12 R. C. L., Habeas Corpus, §30, pp. 1210, 1211; 11 Ann. Cases 1056, 1057, note.

In 1843, the law on the subject of *habeas corpus* was

codified by the legislature of Indiana, and thereafter continuously until the present time, covering the date of the adoption of our present state Constitution, the statutes in force in Indiana have forbidden an inquiry on *habeas corpus* into the legality of any judgment or process whereby a party is in custody for contempt of a court having authority to commit. R. S. 1843 p. 930, §19, 2 R. S. 1852 p. 195, §725, §1176 Burns 1914, *supra*.

It follows that when it was made to appear to the superior court that appellee was in the custody of the sheriff under an order of commitment by the circuit court, pursuant to an affidavit filed in that court charging him with wilful disobedience of an injunction issued in a case pending in that court in which he had been served with process as a party, the superior court had no jurisdiction to inquire whether the circuit court ought to have issued the order. Having jurisdiction of the subject-matter and of appellee the circuit court had power to decide all intermediate questions presented to it, and to make an order binding on the appellee, however erroneous it might be, unless and until it should be set aside on proper application in a direct proceeding for that purpose, by the court which made it, or should be reversed on appeal. And the facts on which the order was based could not be inquired into by a court of co-ordinate jurisdiction, nor collaterally in a different action. *Gillespie* v. *Rump* (1904), 163 Ind. 457, 72 N. E. 138; *Welty* v. *Ward* (1904), 164 Ind. 457, 73 N. E. 889; *Baker* v. *Krietenstein* (1916), 185 Ind. 693, 114 N. E. 445.

The trial court erred in sustaining appellee's exceptions to the return.

A few questions discussed by counsel which may hereafter arise in connection with this matter will be

3. briefly noticed. Where an order for a temporary injunction bearing the judge's signature was

filed with the clerk, and a copy of it was issued to the sheriff and was served by him at the time the summons was served, the mere fact that the judge affixed his signature to such order immediately after the complaint was filed, and before the summons had been issued and placed in the hands of the sheriff, did not affect the validity of the order after it and the summons both had been served. The power to issue a restraining order "at the time of commencing the action or at any time afterward," (§§1206, 1207 Burns 1914, §§1149, 1150 R. S. 1881) includes power to sign such an order at the time the complaint is filed, so that it may be served with the summons. *Leffingwell* v. *Chave* (1860), 5 Bosw. (N. Y. Super.) 703; *Heyman* v. *Landers* (1859), 12 Cal. 107; *Lash* v. *McCormick* (1869), 14 Minn. 482; *Ex Parte Sayre* (1891), 95 Ala. 288; *Howe* v. *Seiberling* (1894), (Com. Pl.) 2 Ohio N. P. 8; *State* v. *Nicoll* (1905), 40 Wash. 517, 82 Pac. 895; *Jordon* v. *Wilson* (1904), 69 S. C. 256, 48 S. E. 224; *Commercial Bank* v. *Ketcham* (1902), 3 Neb. (Unof.) 839, 92 N. W. 998; High, Injunction (4th ed.) §1583. As to the practice in equity see *Universal Savings, etc., Co.* v. *Stoneburner* (1902), (U. S. C. C. Va.) 113 Fed. 251, 51 C. C. A. 208.

There is nothing in the objection that the copy of the restraining order delivered to appellee when the order and summons were served on him is not 4. shown to have been certified. Since he was a party to the action for an injunction and was duly served with summons, if the sheriff actually gave him notice of the order and a copy of it, and made a return that it was served, the appellee should not have disobeyed it, but if he believed the order or the service upon him to be irregular or erroneous, he should have taken steps to have the order or the return of service set aside.

The recital in the order of attachment three times re-

peated, that appellee should be brought into court or required to find sureties for his appearance "on the first day of the next term" of court, was in strict compliance with the statute. §1219 Burns 1914, §1162 R. S. 1881.

And even if there was any error in the first part of the order in also suggesting that the next term was "to be held on the 17th day of July, 1919," the process would still be good as running to the first day of the next term, if the next term commenced after that date. The date of holding the September term being fixed by law, appellee had sufficient notice when it would begin. *Morgan* v. *Woods* (1870), 33 Ind. 23; *Eastes* v. *Eastes* (1881), 79 Ind. 363; *Gallup, Exr.,* v. *Schmidt* (1900), 154 Ind. 196, 56 N. E. 443; *Town of Knox* v. *Golding* (1910), 46 Ind. App. 634, 639, 91 N. E. 857, 92 N. E. 986.

Therefore we decide nothing as to whether the court lawfully could have ignored an intervening special term, duly called for July 17, and have ordered that appellee should be required to appear on the first Monday of September. That question is not material in this case.

Neither is there anything in the point urged by appellee that the order-book entry of the restraining order had not been signed at the time the order was disobeyed. The order, itself, was signed; and it is not necessary that it be copied by the clerk into the order book, and the entry also signed, in order to make it binding. *Kiser* v. *Lovett* (1886), 106 Ind. 325, 6 N. E. 816.

The judgment is reversed, with directions to overrule appellee's exceptions to the return of appellant to the writ of *habeas corpus.*