No. 17,423.

STEWART v. THE STATE.

CONTEMPT.—*Direct and Indirect.*—A direct contempt is committed in the presence of the court while in session; an indirect contempt is where the alleged contempt is not committed in the presence of the court.

SAME.—*Indirect.—Verified Charge.—Rule to Plead.*—Before any steps can be taken against a person for an indirect contempt, a verified charge, in the nature of a complaint or information, in which the facts must be alleged constituting the contempt, must be filed against the person supposed to have been guilty of the contempt; to which charge he is required to plead.

SAME.—*Verified Charge and Answer Part of Record.—Bill of Exceptions.* —The verified charge and the answer thereto are a part of the record without being incorporated in a bill of exceptions. *Semble,* the same is true of the motion for a new trial.

SAME.—*Testing Sufficiency of Affidavit.*—A motion to discharge the rule against the defendant to show cause, on the ground that the affidavit (or complaint) is not sufficient, is sufficient to test such affidavit (or complaint) charging the contempt.

SAME.—*Indirect Contempt.—Sufficiency of Charge.*—In an indirect contempt the defendant, before answering or being punished, is entitled to have served upon him a rule of the court clearly and distinctly setting forth the facts which are alleged to constitute the contempt, and specifying the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him.

SAME.—*Indirect—Denying Charge.—Discharge of Defendant.—Chancery Rule.*—In this State, in constructive or indirect contempts, if the defendant, by his motion or verified answer, fully denies the whole charge on which the rule for an attachment was granted, he must be discharged, and no further evidence can be heard. In chancery other evidence is heard, the defendant is examined on interrogatories, and then the court decides on the truthfulness of the charge.

From the Vigo Circuit Court.

*W. Eggleston* and *J. T. Walker*, for appellant.

*W. A. Ketcham*, Attorney-General, and *M. C. Hamill*, for State.

McCABE, C. J.—This was a proceeding begun in the circuit court by the prosecuting attorney under the order and direction of the judge, in the name of the State, against the appellant, charging him with an indirect contempt of the authority of that court under sections 1017 to 1026, inclusive, Burns R. S. 1894 (R. S. 1881, sections 1005 to 1014), inclusive.

On the trial the appellant was found guilty of the alleged contempt and his punishment was fixed at four months' imprisonment in the county jail and a fine of fifty dollars. The attorney-general has appeared on behalf of the State and has submitted a brief, and so has the prosecuting attorney also filed a brief on behalf of the State. The attorney-general frankly concedes that such error has intervened as would preclude him from asking for the affirmance of the judgment. He, however, commends to our consideration any suggestions upholding the judgment we may find in the prosecuting attorney's brief.

His brief makes but a single point in support of the judgment, and that is not a defense of it on its merits; he concedes that it is the only suggestion he has to make why the judgment shall not be reversed. The principal assault made by the appellant upon the judgment is that the affidavit charging the alleged contempt does not state facts sufficient to constitute or amount to a contempt.

The prosecuting attorney contends that the affidavit has not been made a part of the record by a bill of exceptions, and that, therefore, though it is copied into the transcript and referred to in the bill of exceptions, it forms no part of the record, and hence no question arises on the record concerning it.

It is true, if it is not properly a part of the record as copied into the transcript, the reference to it in the bill of exceptions does not make it a part of the record.

*Beck* v. *State,* 72 Ind. 250, is cited as authority for the contention that the affidavit in such a case is no part of the record unless made so by a bill of exceptions. That case does so decide, but the proceedings there involved were finally terminated in 1878, prior to the enactment of the statute above referred to. That statute was first enacted in 1879, and has since been carried forward into the revision of 1881. When *Beck* v. *State, supra,* was decided we had no general statute regulating the entire proceeding and practice in contempt cases as the statute now in force does. It provides for the procedure and practice in what is known as both direct and indirect contempts. A direct contempt is committed in the presence of the court while in session. See section 1017, *supra;* R. S. 1881, section 1005, *supra.*

An indirect contempt is where the alleged contempt is not committed in the presence of the court. Section 1024, *supra;* R. S. 1881, section 1012, *supra.*

That section provides that "In all cases of indirect contempt, the person charged therewith shall be entitled, before answering thereto or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him, and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend, so as to give the defendant a reasonable and just opportunity to purge himself of such contempt. No such rule, as hereinbefore provided for, shall ever issue until the facts alleged therein to constitute

such contempt shall have been brought to the knowledge of the court by an information duly verified by the oath or affirmation of some officers of the court, or some other responsible person."

The next section provides for the appearance and an-swer of the defendant, either by denying and explaining the facts or by confessing and avoiding them so as to show that no contempt was intended.

It thus appears that there must, before any step can be taken against a person for an indirect contempt, be filed a verified charge in which the facts must be alleged constituting the contempt in the nature of a complaint or information against the person supposed to have been guilty of contempt, who is denominated in the statute as the "defendant." To this he is required to plead by answer. To hold that such verified complaint or infor-mation, or the answer thereto, is not a part of the record unless made so by a bill of exceptions is no more justi-fied than to hold that a complaint or answer in a civil suit, or an indictment or information in a criminal prosecution, can only be or become a part of the record by being made so by a bill of exceptions.

The latter section provides for an appeal to this court in indirect contempts in the same manner as in direct contempts. In cases of direct contempts it is provided that "the defendant may move the court for a new trial, and rescission of its judgment against him; and, if the court shall thereupon overrule such motion, the defend-ant may except and file a bill of exceptions, as in other criminal actions; and in all cases an appeal shall lie thereupon to the Supreme Court." Surely, it was not intended by this statute that the motion for a new trial should require a bill of exceptions to make it a part of the record on such appeal. It is manifest that the Legis-lature did not intend to hamper this right of appeal with

Stewart *v.* The State.

the requirement that the pleadings on which the judgment is founded can only be made part of the record by a bill of exceptions.

We are, therefore, of opinion that *Beck* v. *State, supra,* is not applicable to the present statute regulating the practice and procedure in contempt cases, and that the affidavit upon which the proceeding was based is a part of the record without being made so by the bill of exceptions.

The substance of the affidavit is, that the affiant James W. Stout states, on his oath, that he is the sheriff of Vigo county, and that on December 31, 1892, one Hiram Goad was duly adjudged by said Vigo Circuit Court to be a person of unsound mind and incapable of managing his own estate, whereupon said court duly appointed W. W. Rumsey guardian for said Hiram, and thereupon said guardian qualified, gave bond and entered upon the management of the estate and guardianship of the person of said Hiram Goad; that on March 1st one James Stewart did exercise a certain influence which he possessed over the wife of Hiram Goad, Liona Goad, and, by reason of said influence, caused her to bring to the home of said Stewart butter, eggs and coal, purchased by said guardian for the use of said ward, the said Stewart, well knowing that said articles had been purchased by said guardian for the use of said ward; that on July 1st said Stewart rented a part of his house in Vigo county to said Hiram Goad and permitted said Hiram and his wife to occupy a part of his house for a long time thereafter, to wit: eight weeks, well knowing that David N. Taylor, judge of said court, had ordered in open court, in the presence and hearing of said James Stewart, that said guardian was not to permit his said ward to reside in the house of said Stewart; that at the time said Stewart rented, or permitted said Hiram Goad

to rent or occupy his house, he well knew said guardian had, by an order of David N. Taylor, judge of said court, in open court rented and procured a house for the occupancy of said ward and his wife; that said Stewart has, by the above and in other ways, interfered, molested and disturbed the guardian in the management of the person and estate of his ward; that said Stewart has counseled and advised the said Hiram Goad to resist and not to heed and obey the directions of his guardian, with intent and purpose of interfering with the guardian in the management of the person and estate of his said ward; that on December 31, 1892, said Stewart, being before the judge of said court in open court, while the judge thereof was on the bench of said court, was ordered verbally by said Judge David N. Taylor not to interfere, molest or in any way whatever to counsel, advise or assist the said Hiram Goad in resisting the instruction of his guardian, W. W. Rumsey, and then and there informed said Stewart that he was not to use or in any way take possession of any of the articles or things furnished by said guardian for the use of said ward, and said judge did then and there, from the bench, further say and order said Stewart that he was not to permit the said Hiram Goad to come to his house or to remain about his premises or in any way harbor him; that on July 1, 1894, in utter disregard of the orders of the judge of the Vigo Circuit Court, the said James Stewart did, with intent and purpose of disregarding the orders of the court aforesaid, permit and allow the said Hiram Goad to move into the house of said Stewart, and did rent his house to said Hiram Goad, and did from that time unto the 25th day of September permit said Goad and his wife to reside in his house and part thereof and did harbor said Goad and his wife; and said Stewart did, with the intent aforesaid, accept from said Goad and

wife certain articles furnished by W. W. Rumsey for the
sole use of his said ward, to wit: one dozen eggs, one
load of coal and other articles unknown to affiant, and
that said Stewart has in divers and sundry ways un-
known to affiant, interfered with the management of the
estate and person of Hiram Goad by his guardian.

To this charge the appellant filed an answer, duly
sworn to, denying each and every allegation of fact con-
tained in the affidavit, and thereupon moved that the
rule against him be discharged, which motion was over-
ruled. The appellant then moved the court to discharge
the rule against him to show cause why he should not
be punished for contempt on the ground that there is no
sufficient affidavit, to which motion no further attention
seems to have been given by the court. That motion,
had it been ruled upon, would have tested the sufficiency
of the information or affidavit charging the contempt.
*Cheadle* v. *State*, 110 Ind. 301.

The court then tried the cause, and, having heard the
evidence, found that the answer therein filed is not
sufficient, and that the facts set forth in the petition are
true, and assessed his punishment at imprisonment in
the county jail for four months and a fine of fifty dollars,
and, as before stated, rendered judgment accordingly.

The assignment of errors calls in question the suffi-
ciency of the facts stated in the affidavit, or information,
and the several rulings already mentioned.

The rule entered against the defendant to show cause
why he should not be punished for contempt was as fol-
lows : " The court now orders that the said James Stew-
art be ordered to show cause why he should not be pun-
ished for contempt of court, and is ordered to appear on
the 28th day of September, 1894." This is not a com-
pliance with the statute already quoted providing that :
" In all cases of indirect contempt, the person charged

therewith shall be entitled, before answering thereto or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him.'' Under such a rule as that entered in this case against the appellant, he could not be required to answer nor could he be punished. No facts at all were stated in the rule. We'might find great difficulty in upholding the sufficiency of the facts stated in the affidavit or information to constitute a contempt of court, but as the appellant answered under oath denying each and every one of the facts therein charged against him, he was entitled to a discharge of the rule. It always has been the law in this [State, even prior to the enactment of the statute referred to in constructive or indirect contempts, if the defendant, by his sworn or verified answer, fully deny the charge on which the rule for an attachment was granted, that is sufficient. The weight of the evidence, or the credibility of what is sworn, is never considered ; but if the defendant is hardy enough to swear falsely, he is left to be punished by an indictment. In chancery it is said they proceed differently; they examine the defendant on interrogatories, and also examine witnesses on both sides, and then decide on the truth of the charge. But in a, case of this kind it has always been the law in this State on the filing of the defendant's answer denying the whole charge against him in the affidavit, the court must discharge the rule, and can not . proceed to hear evidence in support of the original affidavit and in contradiction of the answer of the defendant. *Burke* v. *State,* 47 Ind. 528 (534); *Haskett* v.

*State,* 51 Ind. 176; *Wilson* v. *State,* 57 Ind. 71; *State* v. *Earl,* 41 Ind. 464.

But if this were not so, since the enactment of the present statute there can be no question that such is the law now. *Fishback* v. *State,* 131 Ind. 304.

It provides that "if the defendant shall answer to the facts set forth in such rule, by showing that, even if they are all true, they do not constitute a contempt of the court, or by denying or explaining or confessing and avoiding them, so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant." Section 1025, *supra;* R. S. 1881, section 1013.

By the last section of the statute above referred to, Burns R. S. 1894, section 1026 (R. S. 1881, section 1014), the procedure provided for in the preceding sections is made inapplicable to officers, parties to suits, and witnesses charged with disobeying process. *Baldwin* v. *State,* 126 Ind. 24.

There can be no question or doubt that the court erred in overruling the appellant's motion to discharge the rule against him. If the proceeding had been otherwise free from error, the court erred in the punishment assessed.

Section 1022, *supra,* R. S. 1881, section 1010, limits the punishment by fine to $500, and by imprisonment to three months, but, as we have seen, the court fixed the imprisonment at four months.

For the error of overruling motion to discharge, the judgment is reversed, and the cause remanded, with instructions to sustain appellant's motion to discharge the rule against him, and that the court acquit and discharge him:

Filed Jan. 18, 1895.