## McSWANE *v.* FOREMAN ET AL.

[No. 20,450.   Filed October 5, 1906.]

1. DISCOVERY.—*Examination of Parties.—Refusal.—Contempt.—Appeal and Error.*—A proceeding for contempt for refusal to comply with §521 Burns 1901, §513 R. S. 1881, providing that if a party refuse to attend and be examined prior to a trial, he "may be punished as for a contempt," is governed, as to procedure, by §1025 Burns 1901, §1013 R. S. 1881, providing for punishment of persons guilty of indirect contempt and giving a right of appeal.   p. 174.

2. DISCOVERY. — *Parties.—Examination.—Refusal.—Contempt.—Indirect.—Appeal and Error.*—The punishment of a party, by striking out his complaint for refusing to be examined as provided by §521 Burns 1901, §513 R. S. 1881, is governed, as to an appeal, by that provision of §1023 Burns 1901, §1011 R. S. 1881, which gives the defendant the right to "except to the opinion and judgment of the court." p. 175.

3. APPEAL AND ERROR.—*Right of, in Contempt.—Statutes Governing.*—The right of appeal in cases of contempt, except where a fine of "$50 or more" or imprisonment is imposed (§1023 Burns 1901, §1011 R. S. 1881), is governed by the general statutes concerning appeals. p. 175.

4. CONTEMPT. — *Indirect. — Examination of Parties.—Refusal.—New Trial.*—In a case of indirect contempt for a party's refusal to be examined, as prescribed by §521 Burns 1901, §513 R. S. 1881, a motion for a new trial is not necessary to present the case on appeal, since the sole question to be decided is whether the party has fully answered the charge made. p. 175.

5. APPEAL AND ERROR. — *Contempt.—Indirect.—Examination of Parties. — Refusal. — Striking Out Complaint.—Exceptions.*—An exception to the "opinion and judgment of the court," assigned as error on appeal, in a case of indirect contempt, wherein the court struck out plaintiff's complaint under §521 Burns 1901, §513 R. S. 1881, for his refusal to be examined as a witness before trial, properly presents the question of the correctness of the court's ruling below. p. 176.

6. TRESPASS.—*Entry of House by Legal Process.—Examination of Party.—Discovery.*—Plaintiff may lawfully refuse to permit defendant's attorneys and a notary public to enter his house for the purpose of taking his examination as a party to his action. p. 176.

7. PLEADING. — *Answer.—Conclusiveness of.—Contempt.—Indirect.*—Defendant's answer in a proceeding for an indirect contempt imports absolute verity, and must be so considered by the court. p. 177.

8. CONSTITUTIONAL LAW. — *Substantive Rights. — Procedure. —* Substantive rights protected by the Constitution are of primary importance to the courts, the procedure or method of attaining them being secondary and subordinate. p. 177.

9. TRESPASS.—*Entry of House.—Breach of Legal Right.—Matters in Aggravation.*—The invasion of a person's right to security and liberty constitutes a trespass; and wrongs done after such invasion are merely in aggravation of such trespass. p. 177.

10. TRESPASS.—*Waiver.—Entry of House by Legal Process.—Examination of Party.*—The process served upon a party requiring him to submit to an examination as a witness in his own house is invalid, and he does not waive his right to object thereto by failing to refuse permission at the time of service, his abandonment of the house and locking the door being sufficient notice of refusal. p. 178.

From Posey Circuit Court; *O. M. Welborn,* Judge.

Action by Sylvester F. McSwane against Orville P. Foreman and another. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Thomas W. Lindsey* and *Fred P. Leonard,* for appellant.
*Hatfields & Hemenway,* for appellees.

GILLETT, J.—On the motion of appellee Bowker Fertilizer Company the court below struck appellant's complaint from the files and dismissed his action, on the ground of a failure to give his examination as a party. This ruling is assigned as error.

Both the notice to appellant as a party and the subpœna issued for him as a witness provided for the taking of his examination at his dwelling-house, twelve or fourteen miles in the country. It appears without dispute that appellant's family consisted of his wife and five children, and that they dwelt in a house of three rooms; that there was no place therein to accommodate the attorneys and the notary public who would have been required to attend said examination; that appellant's wife was of a highly nervous temperament, easily excited, and easily embarrassed before strangers, and that it would have been very embarrassing to her and the other members of appellant's family to have had said examination taken there; that appellant had been advised by his attorneys that, as a matter of constitutional right, he was authorized to deny access to his home to the persons seeking to examine him; that for said reason, and because of his belief that the notice or subpœna for him to attend as a witness was insufficient, he absented himself

from his home on the day in question, and that when said appellees' attorneys and the notary public appeared there, within the hours fixed, for the purpose of taking said examination, they found the house locked, and that there was no one about the premises. When the notice to take said examination was served on appellant's attorneys, they objected to the place fixed, but we infer that the only objection stated was that it necessitated a trip into the country. The advice which said attorneys gave their client concerning his constitutional right was given after the subpœna of the notary public had been served. At the time the notice of the taking of said examination was served on appellant's attorneys, they informed opposite counsel that their client was willing to appear at any time and place away from his own home for the purpose of being examined, and the counter-showing concluded with a renewal of such offer. It is alleged in the affidavits in support of a motion to strike out that said appellees' attorneys, on the day said examination was to be taken, met one of the attorneys for appellant in the town of Boonville, and he merely informed them that he had been called away on business, and would not attend the examination. From the silence of the affidavits which constituted the showing by appellees, we infer that the grounds on which appellant based his refusal to give his examination at the place fixed were not stated to the other side. Apparently he was content simply to absent himself, acting on the advice of counsel, because the place fixed for the taking of the examination was objectionable to him for the reasons stated.

The contention is interposed on behalf of said appellees that the question which appellant seeks to present by his assignment of errors ought to have been raised by a

1. motion for a new trial. Section 521 Burns 1901, §513 R. S. 1881, provides that any party refusing to attend and testify, as provided in the prior sections, "may be punished as for a contempt; and his complaint,

answer, or reply may be stricken out." The proceeding, being for an indirect contempt, is governed as to the procedure by §1025 Burns 1901, §1013 R. S. 1881. That section provides for an appeal to this court as in cases of direct contempt. In a proceeding of the latter character, provision is made by §1023 Burns 1901, §1011 R. S. 1881, for the right, where the defendant to such proceeding has been adjudged to pay a fine of $50 or more, or to be imprisoned, to move the court to reconsider its opinion and judgment upon the facts before it, or upon the affidavits of any or all persons who were present and heard or saw the conduct alleged to constitute the contempt. The punishment of striking out the complaint and dismissing the action is not such a punishment as is provided for by the provision just mentioned, and falls within the earlier and more general language of said section, by which it is provided that the person found guilty of contempt may "except to the opinion and judgment of the court." No doubt the right to appeal in such a case is governed by the general statute concerning appeals.

In a case of this character, which falls without the provision concerning the special cases mentioned in §1023, *supra,* we are of opinion that a motion for a new trial is unnecessary. The proceeding is summary, and there is really no trial within the provisions of the code governing motions for a new trial. The sole question before the court in such a matter, the contempt charged being indirect, is whether the party has fully answered the charge made against him. *State* v. *Earl* (1872), 41 Ind. 464; *Burke* v. *State* (1874), 47 Ind. 528; *Wilson* v. *State* (1877), 57 Ind. 71; *Fishback* v: *State* (1891), 131 Ind. 304; *Stewart* v. *State* (1895), 140 Ind. 7. In such a case there would be no more occasion for a retrial than there would be where a cause was submitted as an agreed case. The question would be simply one of law—in the first in-

stance, as to whether the facts constituted a cause of action; in the other, as to whether the party had purged himself by his showing. See *Fisher* v. *Purdue* (1874), 48 Ind. 323; *State, ex rel.,* v. *Board, etc.* (1879), 66 Ind. 216; *Lofton* v. *Moore* (1882), 83 Ind. 112; *Witz* v. *Dale* (1891), 129 Ind. 120. Besides, the ruling striking out the complaint bears a closer resemblance to a ruling applying to the pleadings than to the trial proper.

5. As was said in *Cates* v. *Thayer* (1883), 93 Ind. 156: "Issues are always, where a proper course is pursued, closed before trial, and what is closed with the pleadings must be regarded as belonging to them rather than to matters connected with the trial." We are of opinion that the exercise of the right given by the statute "to except to the opinion and judgment of the court" saves the question, and that that ruling may be made the basis of an assignment of errors.

Taking up the main question, there can be no doubt that it was the right of appellant to exclude the attorneys for said appellees and the notary public from his house.

6. The tenderness of the common law for the right of privacy and personal security, which finds expression in the maxim "every man's house is his castle," does not call for a panegyric on our part; it suffices to say that as in earlier times the right of the subject stood over against the possibility of the abuse of executive authority, so under modern conditions the right is a check upon the undue exercise of the powers of government generally. Second only to exemption from arbitrary control of the person is the security of the citizen in his home, and so fundamental is the principle that it has been given expression in the fourth amendment to the United States Constitution and in §11 of the Bill of Rights of Indiana, the first operating as a check upon the federal government, while the other has a like operation as against the State. Counsel for appellees admit their lack of right to examine appellant in

his own home if he had at the time availed himself of his privilege. They contend, however, that the claim advanced by him in response to the rule to show cause was an afterthought, and also that he should have notified them of his objection prior to the time fixed for his examination, or have asserted his objection to the invasion when threatened.

As to the statement that the claim was an afterthought, it is sufficient to say that the showing made by appellant, which, for the purposes of a proceeding for indirect contempt, imports absolute verity, shows the contrary. As to the further claim, we have to say that as the courts are not disposed to give a close and literal construction to those provisions of the fundamental law which are designed to stand as bulwarks in support of individual liberty, so, in their application, the right is regarded as the principal thing, and, if the means resorted to by the citizen for the assertion of his privilege is reasonably adapted to the end, that is all that is required. *Boyd* v. *United States* (1886), 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. In the case last cited, a statute which provided that books, papers and invoices should be produced, on motion of the attorney for the government, or else the allegations of the motion should be taken as true, was held unconstitutional, as applied to an action to declare goods forfeited under the revenue laws, as violative of both the fourth and fifth amendments to the federal Constitution. Mr. Justice Bradley, in deciding that case, after quoting at length from Lord Camden's celebrated opinion in *Entick* v. *Carrington* (1765), 19 How. St. Tr. 1029, said: "The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life.

It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right to personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation of that judgment. In this regard the fourth and fifth amendments run almost into each other."

In view of the above case, we are justified in saying that the process of the examining officer was ineffectual to command appellant to give his examination within the precincts of his own house, so that the invalidity of the proceeding went to the very process itself. As we conceive, the right being the principal thing, appellant could be deprived of his privilege in respect to his home only by a waiver thereof. It might have been more courteous to opposite counsel had they been informed of appellant's intention to disregard the process and of his reasons therefor; but it cannot successfully be asserted that any act, either of himself or of his attorneys, amounted in law to a relinquishment of his right. His conduct in locking the house and departing was not only the very antithesis of a waiver, but was a direct means of asserting his constitutional prerogative.

The order and judgment striking the complaint from the files and dismissing the action is reversed, at the cost of the party procuring said order.