Lawrence F. BRODERICK, Sheriff of Marion County, Indiana, the Marion County Merit Board, Donald E. Gilman, Successor to the Sheriff of Marion County, Indiana and James Wells, Present Sheriff of Marion County, Indiana, Appellants (Plaintiffs Below),

v.

Richard DENBO, County Policeman, Appellee (Defendant Below).

No. 2–1278A418.

Court of Appeals of Indiana, Fourth District.

Dec. 18, 1980.

Rehearing Denied Feb. 5, 1981.

Joseph W. Hammes, Magnuson, Dein & Hammes, Indianapolis, for appellants James L. Wells and Marion County Merit Board.

Donald L. Tunnell, Indianapolis, for appellant Donald E. Gilman.

MILLER, Judge.

Plaintiffs–appellants[1] appeal the trial court's July 12, 1978 order holding Donald Gilman in contempt of court and adjudging the promotions made by the Marion County Merit Board on June 13, 1978, as violative of the trial court's December 3, 1975 injunction prohibiting any promotions of county police officers until the trial court approved a promotion plan.

We reverse for the reasons stated below.

## FACTS AND ISSUES

On October 14, 1975 the Sheriff filed a complaint for a declaratory judgment seeking a determination of the propriety of the sheriff department's rules and regulations on hiring and promoting police officers.[2]

---

1. The original complaint in this case was filed by Lawrence F. Broderick as the Marion County Sheriff and by the Marion County Merit Board. After Broderick's death, Donald Gilman succeeded Broderick as the Sheriff and the representative plaintiff–appellant. On January 1, 1979 James Wells became the Marion County Sheriff and petitioned this Court to be substituted for Sheriff Gilman in his official capacity and not as an individual. We now grant such motion. Sheriff Gilman remains a party to this appeal for purposes of the contempt issue. We will refer to the parties as the Sheriff and the Merit Board unless the circumstances require identification specifically to Sheriff Gilman.

The record indicates that the defendant–appellee, Richard Denbo who was the legal advisor to the Sheriff, was served with a copy of the complaint. The record also indicates that the only actions taken by Denbo were to serve notice of the initial hearing of this complaint to all interested parties and to sign the "Joint Motion of Appellants and Appellee for Substitution of Party" replacing Sheriff Gilman with Sheriff Wells as the representative plaintiff–appellant.

2. Ind.Rules of Procedure, Trial Rule 57 provides:

"DECLARATORY JUDGMENTS

After the trial court held an evidentiary hearing on the Sheriff's complaint on November 25, 1975, it entered an order on December 3, 1975 against the Sheriff and Merit Board prohibiting any promotions within the department until it developed a promotion system satisfying federal and state guidelines.

Pursuant to the above order the Sheriff began to develop testing procedures for hiring and promoting officers as well as establishing job analyses and descriptions. During this preparation period the Sheriff requested, by means of informal letters rather than formal pleadings, the court's permission for certain actions. In this manner the Sheriff successfully sought several time extensions of the deadlines set by the court. In addition, utilizing this informal procedure, by letter of December 13, 1976 the Sheriff requested permission to modify the original order so as to allow promotions of certain officers from an acting to a permanent rank. This request was granted by an endorsement on the letter dated December 21, 1976.[3] These promotions were implemented in April, 1977 and reviewed by the court at a hearing on May 9, 1977 at which the Sheriff presented evidence both justifying the promotions and documenting his efforts to implement the December 3, 1975 order.

One year later, on June 13, 1978 acting upon the Sheriff's recommendations, the Merit Board promoted a second group of officers. The trial court ordered Sheriff Gilman to appear in his official capacity at a hearing on June 28, 1978 to determine if these promotions violated the December 3, 1975 order. While Sheriff Gilman failed to appear personally, his deputies did appear and presented evidence on these promotions. Nevertheless, the trial court continued the hearing to July 12, 1978 to determine if Gilman was in contempt of court for failing to personally appear. After concluding the July 12, 1978 hearing, the trial court made the following entry:

"The Court on its own motion having convened a hearing on June 28, 1978,

---

The procedure for obtaining a declaratory judgment shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. Declaratory relief shall be allowed even though a property right is not involved. Affirmative relief shall be allowed under such remedy when the right thereto is established. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

3. The text of the letter requesting authority to grant promotions is as follows:

> December 13, 1976
> Honorable Michael T. Dugan, III
> Judge, Superior Court # 5
> City–County Building
> Indianapolis, Indiana 46204
> Dear Judge Dugan:
>
> In the judgement [*sic*] issued December 3, 1975, cause # S575–1274, by the court, it was ordered that a manning table be completed and implemented by December 1, 1976. It was also ordered that written promotional test be completed and implemented by September 1, 1976.
>
> At the present time we have applied for a federal grant so that we can obtain a job analysis study. From this job study we will be able to develop written promotional test.

We are receiving proposals from two (2) different agencies to conduct this study for us. We feel that it will take a year to a year and a half to complete this study. The Indiana State Police have been involved in a program to develop promotional test for approximately two (2) years. The Indianapolis Police Department is also developing promotional test and they are in contact with outside agencies seeking help.

I respectfully request that the court grant us until June 30, 1978, to complete the promotional testing project and until June 30, 1977, to complete the manning table.

I further request that during this interium [*sic*] period that the court grant us permission to make permanent promotions within the Sheriff's Department. We propose using oral interviews and past job performance as the criteria for promotions.

I feel that permanent promotions are needed to keep the moral of the officers at an acceptable level, to assure proper performance of their assigned duties.

> Respectfully,
> /s/
> Lawrence F. Broderick
> Sheriff Marion County

LM/mhp

> I approve the above request
> /s/Michael T. Dugan Dec. 21, 1976"
> SIGNATURE        DATE

evidence having been heard; and the Court having examined the personnel records and documents of all individuals offered for promotion, the Court finds:

1. That the Judgment on [sic] the Court on December 3, 1975 is still in full force and effect.

2. That the Judgment of December 3, 1975 restrained the Sheriff of Marion County and the Merit Board from promoting or offering to promote any individual within the department until a system of promotion meeting state and federal guidelines is created. *That no modification of the December order has been made except for extensions of deadlines requested by the plaintiffs.*

3. That on April 12, 1977 28 promotions were made by the Merit Board based in part by a request of then Sheriff Broderick for limited promotions made December 21, 1976.

4. That the Court was informed by Sheriff Gilman on April 25, 1977 that 35 promotions had been made, indicating that various temporary promotion guidelines were in use including scores based on personal performance evaluation, or staff interviews, written examinations and promotional ratings.

5. That on June 13, 1978 the Merit Board promoted 36 individuals to various permanent ranks based upon past personal records and recommendations of superior officers.

6. That guidelines for promotion were transmitted to the Court in April, 1977 and issued November 14, 1977 in the Marion County Sheriff's Department Rules and Regulations setting out various criteria for promotion.

7. That promotional testing is not yet operational or in use in the department and will not be completed until November of 1978.

8. *That promotions made in April 1977 were not made in accordance with the process of promotions transmitted to the Court by the Sheriff in April 1977.*

9. *That promotions made in June, 1978, were not made in accordance with the guidelines transmitted to the Court or with the departments own rules and regulations.*

10. That the promotions of June 1978 were in violation of the restraining order of December 1975.

11. That no acceptable system of promotion yet exists.

WHEREFORE, it is now ordered and decreed that the Promotions offered June 28, 1978 are hereby vacated and the restraining order of December 1975 is continued in full force and effect; and further, the respondent having failed to show good cause why he should not be held in contempt: Donald Gilman, Sheriff of Marion County, is hereby found in contempt of Court for wilfully failing to comply with the order to appear in this Court on June 28, 1978." (Emphasis added.)

The Sheriff properly perfected his appeal from the July 12, 1978 judgment and raises the following issues for our consideration:

1) Did the June 13, 1978 promotions violate the trial court's December 3, 1975 order as modified by its December 21, 1976 approval of both the process for and the promotions of certain police officers from acting to permanent rank?

2) Did the trial court err in finding Sheriff Gilman in contempt for failing to appear at the hearing on June 28, 1978?

### DECISION AND DISCUSSION

A. *Issue One.*

■ In presenting his argument on the first issue the Sheriff attacks the sufficiency of the evidence to support the trial court's findings of fact numbers 2, 8 and 9, claiming that since the evidence does not support these findings, the trial court's judgment premised thereon is erroneous. In considering such an appeal, our standard of review is enunciated by Ind.Rules of Procedure, Trial Rule 52(A) which states that the trial court's findings of fact or judgment are to be upheld unless "clearly erroneous." Consequently, the trial court's findings are clothed with the presumption

that they are correct and the Sheriff has the burden of establishing error. We must provide the trial court due regard for its opportunity to evaluate the evidence presented, *American Family Mut. Ins. Co. v. Bentley*, (1976) Ind.App., 352 N.E.2d 860, and are limited to examining the evidence most favorable to the trial court's findings since it is impermissible to weigh the evidence or consider the witnesses' credibility. If there is evidence of probative value, such findings will be affirmed. *Census Federal Credit Union v. Wann*, (1980) Ind.App., 403 N.E.2d 348; *Ray v. Goldsmith*, (1980) Ind. App., 400 N.E.2d 176.

An examination of the evidence most favorable to the trial court's July 12, 1978 findings and judgment reveals the following:

On December 3, 1975 the trial court entered an order against the Sheriff and Merit Board:

1) restraining them "from promoting or offering to promote any individual within the department until a system of promotion meeting state and federal guidelines is created";

2) requiring presentation of "a preliminary draft of such a system to the court on or before April 1, 1976 for implementation no later than September 1, 1976";

3) prescribing development and submission to the court of "a system of officer evaluation and a manning table preliminarily by May 1, 1976, for implementation by December 1, 1976"; and

4) necessitating an "ongoing evaluation of its proposed recruitment and hiring procedures for current applicants" with a report of its procedures and hiring status to be submitted to the court by March 1, 1976.

As we noted earlier, several extensions of the above deadlines were granted by the court. Significant to our decision, however, was a letter dated December 13, 1976 sent by the Sheriff and delivered to the trial court by one of his deputies, Major Larry McHenry, which requested a modification of its original order as follows:

1) an extension of the deadline for submission of the promotion testing system to June 30, 1978;

2) an extension of the deadline for the submission of the manning table to June 30, 1975; and

3) authority during the interim period to promote permanently officers from an acting to the parallel permanent rank.[4]

Oral interviews and past job performance evaluations were the basis for the interim permanent promotions. The Sheriff felt these interim promotions were necessary to maintain morale and to assure proper performance of assigned duties. The trial court granted the Sheriff's tripartite request on December 21, 1976.

Pursuant to the authority granted by the trial court, the Merit Board followed the Sheriff's recommendation and on April 12, 1977 promoted 10 lieutenants and 25 sergeants from an acting to a permanent rank within those job levels. These promotions effectively insulated the 35 officers from political retaliation since a new Sheriff would be unable summarily to demote them to their previous permanent rank.

At the May 9, 1977 hearing the trial court reviewed the April 12, 1977 promotions and heard other evidence relative to its December 3, 1975 order. With respect to the plan, testimony therein revealed that the job analyses, officer evaluations, promotional testing system and a manning table were being developed. Also Major McHenry tes-

---

**4.** While the December 3, 1975 order was not denominated as a "preliminary injunction," the first portion of it, preventing further promotions until the trial court approved promotion guidelines, clearly operated as a preliminary injunction since the trial court sought to preserve the *status quo* within the department until the declaratory judgment complaint could be resolved on the merits. *See Rees v. Panhan-*

*dle Eastern Pipe Line Co.*, (1978) Ind.App., 377 N.E.2d 640; *see generally*, Ind.Rules of Procedure, Trial Rule 65(A), (B); 4 W. Harvey, Indiana Practice, Author's Comments §§ 65.1–65.3 (1971). Consequently, pursuant to TR 65(A)(4) the trial court possessed the power to modify its order granting the preliminary injunction either upon its own motion or that of the Sheriff.

tified that the Merit Board based the April 13, 1977 promotions upon seniority, a job evaluation of the officer while he held the acting rank and personal interviews. After considering the testimony, the trial court stated:

"... there are no other proposed promotions at this time since the approval in December [, 1976] was for interim promotions for people basically ... as a matter of fact along the lines of [the testimony] to date. And that being persons generally of long term longevity on the Department."

Important to our decision herein is the fact that these promotions remained in effect after this hearing because the Court did not specifically disapprove them.[5] Rather the only affirmative action required by the court as a result of this hearing was submission of documents relative to developing the plan. The department complied with this order.

On June 13, 1978 the Merit Board followed the recommendations of the Sheriff and promoted an additional 36 officers from an acting to a permanent rank for specific job capacities. One week later the trial court *sua sponte* ordered Sheriff Gilman to appear in his official capacity on June 28, 1978 for a hearing to review the 1978 promotions. Testimony at this hearing revealed that the 1978 promotions were based upon:

1) monthly individual performance evaluations of the officer while in his acting rank and job position within the Department;

2) the requirement that the individual being considered for promotion must have held an acting rank at least as high as the permanent rank to which he was to be permanently promoted;

3) formal or informal oral interviews with some of the persons considered for promotion;

4) recommendations from superior officers;

5) promotion potential ratings at the time the person in question had been elevated to his acting rank; and

6) an overall departmental performance review which had been conducted in July, 1977.

■ The above record plus the uncontradicted evidence presented at the June 28, 1978 hearing demonstrates two things. First, the original court injunction of December 3, 1975 prohibiting *any* promotions of police officers was modified by the court as a result of the process commencing with the December 13, 1976 letter endorsed and approved on December 21, 1976 and culminating with the May 9, 1977 hearing, the result of this process being the implicit approval of the interim promotions from acting to permanent ranks. Our conclusion is fortified by the court's failure to vacate the first promotions either after the first hearing or in the July, 1978 order. The criteria for such promotions were: 1) job performance evaluations while in the acting rank; and 2) seniority. Therefore, that portion of the second finding stating: "That no modification of the December [3, 1975] order has been made except for extensions of deadlines requested by the plaintiffs" is unsupported by the evidence and is erroneous. The 1977 and the 1978 promotions were premised on job evaluations. While both sets of promotions violated the original 1975 injunction, these promotions were well within the requirements of the injunction as modified on December 21, 1976 and May 9, 1977. Second, the June 13, 1978 promotions were clearly within the specific criteria approved at the first hearing although they did elaborate and improve upon the general criteria of past job performance. Finding of fact number 8 implicitly finds that the court accepted the earlier 1977 criteria since this finding says the 1977 promotions violated the 1977 criteria submitted to the court. Consequently, the trial court's finding of fact number 2 holding the promotions violated the 1976' injunction and findings of fact 8 and 9, suggesting the 1977 and 1978 promotions violated the department's criteria are clearly erroneous as

---

5. Nor did he vacate these promotions in the judgment now under review.

not supported by probative evidence. Because these erroneous findings of fact are the premise of the trial court's July 12, 1978 order vacating the June 13, 1978 promotions, the trial court's order is in error and is hereby reversed.

## B. *Issue Two*

On June 20, 1978 the trial court *sua sponte* issued to Sheriff Gilman an order to appear in his official capacity at a hearing on June 29, 1978 to review the June 13, 1978 promotions. At the time the court issued this order, Gilman was vacationing in Arizona; consequently, a deputy informed him of the order during a telephone conversation. Because the hearing was to be held during his vacation and since his subordinates possessed the required information, Gilman ordered them to appear in his place.

At the hearing where the court received evidence concerning the reasons and the method for granting the June 13, 1978 promotions, the Sheriff's department's attorney, Phillip V. Price, informed the court that Gilman would not appear but instead had directed his deputies to be present and supply the requisite information to the court. Thus, witnesses were present who supplied the pertinent testimony and exhibits relative to the Merit Board's authority and method for granting the 1978 promotions. No evidence was introduced concerning Gilman's failure to appear but at the conclusion of the hearing the trial court on its own motion orally ordered Gilman to appear personally on July 12, 1978 and show cause why he should not be held in contempt for failing personally to respond to the court's initial order.

The July 12, 1978 hearing proceeded as scheduled, Gilman having filed his response the preceding day. The trial court began the hearing by stating that it had a dual purpose in conducting the hearing: 1) concluding the June 29, 1978 hearing; and 2) determining if Gilman was in contempt. Gilman made a brief statement that he felt the Merit Board possessed authority to promote the officers under the December 21, 1976 modification of the December 3, 1975

injunction. However, the bulk of the hearing dealt with the trial court's examination of Gilman as to his reasons for disobeying the order to appear. He admitted he knew of the order, but stated he never was personally served since he was in Arizona at the time of service. Gilman did not return because similar orders in different proceedings merely required the appearance of a subordinate with the necessary information. By ordering such subordinates to appear, he believed, on the advice of his attorney, that he had substantially complied with the order. The trial court recessed for 15 minutes to consider Gilman's testimony. Upon returning it issued the findings of fact and conclusions of law previously set out. On the contempt issue the trial court stated:

> "... the respondent [Gilman] having failed to show cause why he should not be held in contempt: Donald Gilman, Sheriff of Marion County is hereby found in contempt of Court for wilfully failing to comply with the order to appear in this Court on June 28, 1978."

Sheriff Gilman appeals generally attacking the contempt citation as being in error. Specifically, he raises two arguments:

1) The trial court's contempt citation is contrary to law because it is an indirect contempt citation requiring compliance with Ind.Code 34–4–7–8 and Ind.Code 34–4–8–1, a procedure not followed here.

2) Even if the trial court's contempt citation is for direct contempt and does not require compliance with the above statutes, the citation is contrary to the evidence since Gilman established the defense of good faith compliance with the order to appear.

Because we agree with the first argument, we need not consider the second.

Direct contempt is defined by Ind.Code 34–4–7–1 and Ind.Code 34–4–7–2 which provide:

> "34–4–7–1 Direct contempt; disturbing court
>
> Sec. 1. Every person who shall, by the commission of any felony, misdemeanor, or other unlawful act; or who by talking, moving about, or by signs, or gestures, or in any other manner, in any court of

record, while the same is open for the transaction of business, and engaged therein, create any noise or confusion therein, whereby the business and proceedings of said court shall be disturbed, shall be deemed to be guilty of direct contempt of said court."

"34-4-7-2 Direct contempt; witnesses

Sec. 2. Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceedings thereof, shall be deemed guilty of a direct contempt thereof."

These statutory definitions here have been further refined by the Indiana Supreme Court in *LaGrange v. State*, (1958) 238 Ind. 689, 699, 153 N.E.2d 593, 596, as meaning any: ·

"... conduct directly interfering with court proceedings while court is in session, including creation of noise or confusion, disrespectful conduct and refusing to take the witness stand in a trial. It has been stated in the cases defining such contempt that such conduct must take place in or immediately adjacent to the courtroom and while court is in session, so that the judge has personal knowledge of such conduct in his official capacity...." (Citations omitted.)

■ Conversely, indirect contempt is generally characterized by such acts as disobeying process, Ind.Code 34-4-7-3 [6]; resisting process or intimidating a witness out of the presence of the court, Ind.Code 34-4-7-4; [7] or making any false or grossly inaccurate report of any proceedings while pending before the court, Ind.Code 34-4-7-5; [8]

---

6. IC 34-4-7-3 states:

"Every person who shall be guilty of any wilful disobedience of any process, or any order lawfully issued by any court of record, or by the proper officer thereof, under the authority of law, or the direction of such court, after the same shall have been served upon him, shall be guilty of an indirect contempt of the court from which such process or order shall have issued.

In *Levick v. Hughlett*, (1946) 224 Ind. 561, 69 N.E.2d 17, the defendant failed to appear when the trial court ordered him to appear and show cause why he should not have been held in contempt for failure to make previously court ordered payments. The trial court on its own motion summarily found the defendant in contempt of court. The Indiana Supreme Court held the trial court's actions to constitute indirect criminal contempt requiring the state to prosecute the contempt charge. Therefore, the Indiana Supreme Court dismissed the civil plaintiff from the contempt case and inserted the state in her place. Subsequently, the Indiana Attorney General admitted that the trial court failed to comply with § 3-908, Burns 1946 Repl. (currently IC 34-4-7-8) which entitled a person charged with indirect contempt to a rule to show cause and notice so he may have an opportunity to purge himself before he is punished. As a result, the Indiana Supreme Court dismissed the contempt charge. *Levick v. State*, (1946) 224 Ind. 561, 69 N.E.2d 597.

7. IC 34-4-7-4 provides:

"Every person who shall wilfully resist, hinder or delay the execution of any lawful proc-

ess, or order of any court of record shall be guilty of an indirect contempt of said court; and every person who shall offer, give or promise any reward, or who shall threaten to assault or injure, or shall assault or beat or in any other manner whatever influence or intimidate or attempt to influence any witness to give, or abstain from giving testimony in any case, or to abstain from attending as such witness in any case, or who shall do any act to put such witness in fear, on account of any testimony which he or she may have given, or who, on account of any such testimony, shall injure, or threaten to injure such witness, shall be guilty of a direct or indirect contempt of the court in which such witness may be called to testify, according as the same may be done in the presence of such court, or elsewhere out of the presence thereof."

8. IC 34-4-7-5 specifies that:

"Every person who shall falsely make, utter or publish any false or grossly inaccurate report of any case, trial, or proceeding, or part of any case, trial or proceeding thereof, shall be deemed guilty of an indirect contempt of the court in which such case, trial or proceeding may have been instituted, held or determined, if made at any time after such proceeding shall have been commenced, and at any time while the same is pending, and while the court shall have jurisdiction thereof, and at any time before it shall be fully determined and ended, or, if such report shall

*Boggs v. State*, (1979) Ind.App., 386 N.E.2d 992. Furthermore, disobedience of a court order constitutes criminal contempt if it is willingly done, indicates a deliberate design to disobey the court order as an act of defiance and interferes with the court's function. *Denny v. State ex rel. Brady*, (1932) 203 Ind. 682, 182 N.E. 313; *Gillie v. Fleming*, (1922) 191 Ind. 444, 133 N.E. 737.

■ Sheriff Gilman's alleged contemptuous act was failing to appear as ordered. This did not create a physical disturbance in the courtroom nor did it constitute any attempt by Gilman to coerce or influence the trial court in its ruling on the June 13, 1978 promotions. Moreover, Gilman made available his deputies thereby assuring that the necessary information would be presented to the trial court at the June 28, 1978 hearing. At the July 12, 1978 hearing the trial court did not receive any new evidence from Gilman. Consequently, the trial court's July 12, 1978 judgment vacating the June 13, 1978 promotions was based upon the deputies' testimony and exhibits. As a result, it is apparent that Gilman's absence from the initial hearing did not interfere with the trial court's conduction of that hearing.

■ From the above discussion it follows that the alleged contempt should have been treated as an action for indirect criminal contempt and Gilman should have been tried accordingly. *See Levick v. State, supra* at fn. 5. Therefore, we turn our attention to those statutory provisions specifying the proper procedure for indirect contempt citations.

IC 34–4–7–8 controls this procedure and provides:

"In all cases of indirect contempts, the person charged therewith shall be entitled, before answering thereto, or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt; and shall specify the time and place of such facts with such reasonable certainty, as to inform the defendant with the nature and circumstances of the charge against him; and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the *court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt.* No such rule as hereinbefore provided for, shall ever issue until the facts, alleged therein to constitute such contempt, shall have been brought to the knowledge of the court by an information, duly verified by the oath of affirmation of some officers of the court, or other responsible person."[9] (Emphasis added.)

---

be so made pending such case, trial or proceeding, touching any ruling, or order of said court therein, such person shall be deemed guilty of an indirect contempt of the court making such ruling or order."

9. Ind.Code 34–4–7–9 and IC 34–4–8–1 specify additional procedures to follow in an indirect contempt citation. IC 34–4–7–9 requires that:

"If the defendant shall fail to appear in said court, at the time and place specified in the rule provided for in the last preceding section, to answer the same, or, if after having appeared thereto, the defendant shall fail or refuse to answer touching such alleged contempt, the court may proceed at once, and without any further delay, to attach and punish him or her for such contempt; *but if the defendant shall answer to the facts set forth in such rule, by showing that, even if they are*

*all true, they do not constitute a contempt of the court, or by denying, or explaining, or confessing and avoiding them, so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant*; but, if the defendant shall not, in his answer to such rule, sufficiently deny, explain or avoid the facts therein set forth, so as to show that no contempt has been committed, the court may proceed to attach and punish him for such contempt, by fine, or imprisonment, or both, as hereinbefore provided, and the defendant having appeared to such rule may except, file a bill of exceptions, and appeal to the general term, and to the Supreme Court, in the same manner as in cases of direct contempt." (Emphasis added.)
IC 34–4–8–1 is not pertinent to our decision.

Considering the previously stated facts, it is obvious the trial court did not accord Gilman the protections guaranteed by the above statutes. No information "duly verified by the oath of affirmation of some officer of the court, or other responsible person" was filed with the trial court prior to its entry at the June 28, 1978 hearing. Furthermore, the trial court's oral pronouncement at the conclusion of this hearing failed to constitute a rule to show cause under IC 34–4–7–8 since it did not clearly and distinctly set forth the facts allegedly constituting the contempt nor did it specify the time and place of the occurrence of such facts with reasonable certainty so as to inform Gilman of the nature and circumstances of the charge against him. IC 34–4–7–8; *see Stewart v. State,* (1895) 140 Ind. 7, 39 N.E. 508.[10]

From the record before us it is apparent that the trial court attempted to punish Gilman for an alleged indirect contempt—not a direct contempt. It is also apparent that the statutory procedures for indirect contempt were wholly disregarded. Therefore, in this regard we must vacate the finding of the trial court.

The trial court's order is reversed on both issues and we remand this cause to the trial court for further proceedings consistent with this opinion.

YOUNG, P. J., and CHIPMAN, J., concur.

---

**10.** Because procedural defects in the contempt charge resulted in an invalid charge being made against Gilman, we need not discuss the merits of the charge. Nevertheless, we first comment that if the charge had been properly entered against Gilman, his reasons for failing to appear purged him of the alleged contempt. IC 34–4–7–9. Our second observation is that when an individual (such as the Sheriff) is ordered to appear in his official capacity to produce departmental records, his deputy can appear in his place. *See* Ind.Code 5–6–1–2. By ordering his deputies to appear with appropriate records, Gilman satisfied this statute and the court's order since he was ordered to appear in his official capacity. Additionally, he ensured that the requisite information and documents would be submitted to the court.